KAHN, J.T.C.
This is the court’s determination with respect to plaintiff, United States Postal Service’s (“taxpayer”) motion to apply the Freeze Act to its 1996, 1997, and 1998 property tax assessments. The current motion is a product of property tax appeals filed by taxpayer for the property located at 850 Newark Turnpike, Kear-ny, New Jersey for the tax years 1991 through 1996. This court *285 entered judgments in said appeals on November 22, 1996, pursuant to signed settlement stipulations which agreed on a 1996 assessment of $18,216,000. Thus, according to the settlement, the parties agreed that, as of October 1, 1995, the value of the subject property was $18,216,000.
The present dispute arises out of a $1,000,000 added assessment levied against the taxpayer on October 1, 1996, for lighting improvements, which allegedly increased the total 1996 assessment from $18,216,000 to $19,216,000. Taxpayer paid the additional tax and did not directly appeal; however, it subsequently filed motions with this court to invalidate the added assessment. In its moving papers, taxpayer requested that the court either 1) enforce the terms of the November 26, 1996 settlement, or 2) apply the Freeze Act to the 1996, 1997, and 1998 assessments. In a June 15, 1998 written opinion, this court denied taxpayer’s application to enforce the aforementioned settlement on jurisdictional grounds. The latter motion was denied without prejudice because of insufficient evidence regarding the installation date and value of the lighting improvements.
A subsequent plenary hearing established the following: 1) with the exception of punch list items and painting, the lighting improvements in question were completed by June 1995, and 2) the municipality inspected the property in the Spring of 1995, sometime after a substantial amount of the improvements were already in place. In light of these factual determinations, taxpayer renewed its motion to apply the Freeze Act to the 1996, 1997, and 1998 assessments. More specifically, taxpayer contends that the municipality did or should have known about the lighting improvements because they were in place several months before October 1, 1995. As a result, N.J.S.A. 54:51A-8 should operate to prevent the municipality from levying an additional assessment for either the base year or two subsequent freeze years.
In opposition, the municipality requests the court to create an equitable exemption from the Freeze Act. In essence, the municipality contends that taxpayer should be estopped from asserting the Freeze Act, because it did not notify the municipality of the *286 improvements by either: 1) obtaining; a construction permit or certificate of occupancy, or 2) advising the pertinent officials of the improvement during the Spring 1995 inspection. In turn, for Freeze Act purposes, the improvements should be deemed completed when the municipality discovered them, in February of 1996, several months after the base year assessment date.[1]
The municipality contends that it is entitled to an equitable exception to the Freeze Act because it was unaware and had no reasonable way of finding out about the lighting improvements. Estoppel is an equitable doctrine which is invoked to avoid injustice in certain cases. See Heckler v. Community Health Servs. of Crawford County, Inc., 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42, 51 (1984). In order to succeed in a regular claim of estoppel, the claimant must demonstrate that: 1) it relied, to its detriment, on its adversary’s misrepresentation, and 2) such reliance was reasonable, because the claimant knew nor should have known that the adversary’s conduct was misleading. See Persick v. United States Postal Service, 2001 WL 185543 (E.D.Pa.2001) (quoting Fredericks v. Commissioner of Internal Revenue, 126 F.3d 433 (3d Cir.1997)); see also Town of Secaucus v. City of Jersey City, 19 N.J. Tax 10 (2000) (in adjudicating an estoppel argument, the court carefully weighs all of the factors). The doctrine of estoppel, however, is severely limited when applied to the federal government. See OPM v. Richmond, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). In fact, where a party seeks to use this defense against the federal government, the claimant must also show affirmative misconduct on the part of the government officials. See Fredericks, supra, 126 F.3d at 438.
Thus, adjudication of the municipality’s estoppel argument requires this court to undertake a three-step analysis. This court must first determine whether the municipality can make out the elements of estoppel. To that end, this court must determine whether the municipality did or should have known about the *287 lighting improvements before October 1, 1995. Second, if this court finds that the municipality did not or should not have discovered the improvements, the court must determine whether the municipality may use the estoppel argument to create an equitable exception to the Freeze Act which would, in effect, allow a municipality to recapture lost tax dollars via an added assessment on property improved prior to October 1 of the pre tax year. Finally, if the exception is created, this court must determine whether the exemption should be applied to the current facts.
The threshold determination is whether the municipality knew or should have known about the improvements prior to October 1, 1995. If so, the municipality is barred from assessment estoppel, and the Freeze Act clearly applies and operates to invalidate the added assessment. The dispute presently before the court pertains to an added assessment levied on the property for a lighting enhancement project which began in February 1994. The purpose of, the improvements was to upgrade the building’s lighting scheme by replacing the existing fluorescent “strip” lights with high intensity, “hockey puck” shaped lights. By January 1995, the lighting was in place on the first floor. Moreover, the walls and columns on the floor were painted. The record indicates that, with the exception of certain punch list items and additional painting, the taxpayer finished the project before the municipality inspection in Spring 1995.[2] In fact, the testimony indicates the project was 95% finished by June of that year. In sum, the lighting improvements that created the actual lighting were completed and in place during the municipality’s Spring 1995 inspection.
While the municipality does not necessarily dispute that the improvements were essentially completed at the time of the Spring 1995 inspection, it argues that it is entitled to an exception *288 from the Freeze Act because it did not and could not know about them. In support of this position, it points out that taxpayer neither, told it about the improvements, nor did the taxpayer apply for a building permit or certificate of occupancy. While these facts are true, the evidence indicates that the municipality was not denied access to the improved areas of the building, and did, in fact, inspect those areas. More telling is that the municipality noticed the lighting improvements in a similar inspection in February 1996, even though there was no visible change since the prior inspection in Spring 1995. The only reason offered by the municipality is that the improvements simply did not register during the first inspection, but were noticed during the second. Moreover, the evidence indicates the municipality did know about the lighting improvements before the settlement was entered into and, for strategic reasons, chose to impose an added assessment instead of incorporating an assessment on the improvements into the agreement. For these reasons, this court finds that the municipality did or should have known about the lighting improvements prior to October 1, 1995. In turn, taxpayer’s motion to apply the Freeze Act to the 1996, 1997, and 1998 assessments is granted.
Even if the municipality could prove the elements of estoppel and demonstrate it did not or should not have known about the improvements, it would not be entitled to an exception to the Freeze Act. The Freeze Act provides:
Where a judgment not subject to further appeal has been rendered by the Tax Court involving real property, the judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to the proceeding, for the assessment year and for the 2 assessment years succeeding the assessment year covered by the final judgment, except as to changes in value of the property occurring after the assessment date. The conclusive and binding effect of the judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation or complete reassessment of all real property within the district has been put into effect. If as of October I of the pre tax year, the property in question has been the subject of an addition qualifying as an added assessment ..., the conclusive and binding effect of such judgment shall terminate with said pretax year.[3] See N.J.S.A. 54:51A-8.
*289 The Freeze Act is mandatory. See Jack Nissim & Sons, Inc. v. Bordentown. Tp., 10 N.J. Tax 464, 468 (1989). Thus, if an assessment is subject to a final judgment, the Tax Court must apply it to bind the municipality for the judgment year and two succeeding years absent one of the two recognized statutory exceptions: revaluation or change in value. Id. To defeat application of the Freeze Act by demonstrating change in value, the municipality has the burden to show that: 1) the change in value results from internal or external change; 2) the change occurred after October 1 of the base year; and 3) the change substantially and meaningfully increased value of taxpayer’s property. See AVR Realty Co. v. Cranford Tp., 316 N.J.Super. 401, 407, 720 A.2d 434 (App.Div. 1998), certif. denied, 160 N.J. 476, 734 A.2d 791 (1999).[4]
In the present case, the record clearly indicates that the improvements occurred before October 1, 1995. In fact, the municipality abandoned its previous position that the improvements occurred after October 1, 1995, sometime before the plenary hearing. Thus, the municipality is unable to employ any of the traditional statutory exceptions to the Freeze Act. Nevertheless, the municipality requests that this court carve out an additional equitable exception to the Freeze Act because the municipality had no way of knowing about the improvements before the February 1996 inspection. This exception would, in effect, enable the municipality to levy an added assessment by deeming the completion date of the improvements to be in February 1996, rather than Spring 1995.
This court disagrees. As a preliminary matter, this court finds that the equitable remedy sought goes against the intent of N.J.S.A. 54:51A-8. A cursory review of the text of the Freeze Act and subsequent case law interpreting same clearly indicates a preference toward strict construction. See N.J.S.A. 54:51A-8; Norhtvale Bor. v. Director, 17 N.J. Tax 204 (1998), *290 aff'd., 324 N.J.Super. 518, 736 A.2d 529 (App.Div.), certif. denied, 161 N.J. 147, 735 A.2d 572 (1999); AVR Realty Co. v. Cranford Tp., 16 N.J. Tax 550 (1997), rev’d 316 N.J.Super. 401, 720 A.2d 434 (App.Div.1998), certif. denied, 160 N.J. 476, 734 A.2d 791 (1999); Grandal Enterprises, Inc. v. Bor. of Keansburg, 292 N.J.Super. 529, 679 A.2d 193 (App.Div.1996); Jack Nissim & Sons, Inc. v. Bordentown Tp., supra, 10 N.J. Tax 464. More specifically, the Legislature’s choice to make application of the Act mandatory, absent one of two specifically drawn exceptions, coupled with the assessor’s duty to inspect property before October 1 of the pretax year, require this court to abstain from creating any additional exceptions to the Act. See AVR Realty Co., supra, 316 N.J.Super. at 406, 720 A.2d 434. If the Legislature determines that it is in this State’s best interest and in the interest of justice to create such an equitable exception, it should amend the statute to provide for such a remedy.
Moreover, even if this court were to establish such an equitable remedy, the present facts would not mandate its application. Assuming, for the purpose of this argument, that the municipality did not and should not have known about the improvements until February 1996, the record indicates that the municipality did know about the improvements before entering into the settlement. In fact, the municipality’s expert indicated that he purposely refrained from any overture regarding the improvements, because he felt it would have stalled negotiations indefinitely.[5] Thus, requiring the municipality to refund the added assessment does not present a grave injustice to the municipality.[6]
*291 CONCLUSION
For the reasons stated herein, the taxpayer’s motion to apply the Freeze Act is granted. The Tax Court Administrator shall enter judgment as follows:
1996
Land $ 3,000,000
Improvement $15,216,000
Total $18,216,000
1997
Land $ 3,000,000
Improvement $15,216,000
Total $18,216,000
1998
Land $ 3,000,000
Improvement $15,216,000
Total $18,216,000

 There is no dispute that the federal government is not required to apply for either construction permits or certificates of occupancy.

 Testimony indicates the punch list items did not change or alter the appearance of the new lighting. More specifically, these items referred to the instilfation of ‘'rigging" and moving of misplaced lighting. The record also indicates that, while the walls and columns were painted at the time of the Spring 1995 inspection, the ceiling had not yet been completed.

 A judgment based on a stipulation of settlement is considered a final judgment which would require application of the Freeze Act. See South Plain- *289 field Bor. v. Kentile Floors, Inc., 186 N.J.Super. 399, 453 A.2d 182 (App.Div. 1982), aff'd., 92 N.J. 483, 457 A 2d 450 (1983).

 Neither parly alleges that any of the years in question were revaluation years.

 In fact, in United States Postal Service v. Kearny, 17 N J. Tax 397 (1998), this court found that the settlement failed to address the added assessment despite the parties’ knowledge of the levy.

 In no way does this opinion prevent a municipality from obtaining added assessments on improved property. It can still avail itself of said taxes by yearly inspections. Moreover, the federal government's immunity from building permits does not prevent the municipality from requiring it to fill out a questionnaire or submit a report for property tax purposes.