KAHN, J.T.C.
This is the court’s decision with respect to post-judgment cross-motions. This court previously decided local property tax appeals for the years 1994 through 1998. Universal Folding Box Co. v. City of Hoboken, 19 N.J.Tax 141 (Tax 2000). In that case, judgments were entered reducing the assessments in the subject property for each of the five years in issue. The municipality appealed those judgments, which appeal is still pending.
Taxpayer moves to compel the municipality to pay all tax refunds resulting from the reduced assessments. The municipality objects and cross-moves for a stay pending resolution of the appellate process.
Taxpayer’s first argument is that, upon receipt of the aforementioned judgments which result in the right to receive reimburse *3 ment of overpaid taxes plus interest thereon, taxpayer should be able to proceed to immediately obtain the tax refunds and interest. Reliance is placed upon Arrow Manufacturing Co. v. Town of West New York, 321 N.J.Super. 596, 729 A.2d 1061 (App.Div.1999), remanded opinion, 18 N.J.Tax 574 (Tax), aff'd and reversed in part, 19 N.J.Tax 200 (App.Div.2000), wherein the Appellate Division stated:
The Tax Court, moreover, although a court of limited jurisdiction (N.J.S.A. 2B-.13-1), is a court nonetheless and must possess the power to enforce its own judgments. To deny it that power would reduce it to a hollow shell and would invite disrespect.
[Id. at 599, 729 A.2d 1061.]
Taxpayer’s reliance on Arrow is misplaced. That case dealt initially with judgments entered in favor of taxpayer, reducing various assessments in the Town of West New York. There was a delay occasioned by the municipality’s failing to honor the reduced assessments, leading to motions by taxpayer to obtain the repayment of overpaid taxes and statutory interest. This court entered orders requiring the municipality to comply within a specific period of time, which the municipality failed to do. In a subsequent motion, this court denied taxpayer’s request for sanctions consisting of additional interest, costs and counsel fees. The Appellate Division, however, reversed, indicating with the aforementioned language that Tax Court judgments must be enforced. In the case at bar, however, the municipality complied with the Tax Court judgments. The judgments merely required the municipality to reduce each of the assessments, consistent with this court’s decision and judgment with which the municipality complied. Those judgments did not order payment of tax refunds by the municipality to the taxpayer.
N.J.S.A. 54:3-27.2 controls the next stage of the proceeding and provides as follows:
In the event that a taxpayer is successful in an appeal from an assessment on real property, the respective taxing district shall refund any excess taxes paid, together with interest thereon from the date of payment at a rate of 5% per annum, less any amount of taxes, interest, or both, which may be applied against delinquencies pursuant to P.L. 1983, c. 137 (C. 54:4-134), within 60 days of the date affinal judgment. [Emphasis added.]
*4 Prior to amendment in 1977, that statute referred only to “judgment.” The 1977 amendment changed the language to “final judgment.” Subsequent decisional authority interpreted the legislation to clarify that refunds be paid only after appeal rights have expired.
In Wilshire Selby West, Ltd. v. Ramsey Bor., 6 N.J.Tax 60 (Tax 1983), Judge Conley stated:
It has not been judicially determined whether “the date of final judgment” referred to in the statute is the date of the entry of judgment by a county board of taxation, the Tax Court, the Appellate Division or the Supreme Court. However, the only reasonable xoay to construe the language is for it to mean the date of the judgment from which no appeal has been or may be taken. Only after appellate review of a judgment has been exhausted may a taxpayer be said to have been “successful in any appeal from an assessment on real property,” at which time the tax refund provision becomes operative. N.J.S.A. 54:3-27.2. It would be unreasonable to conclude that the Legislature intended to require a taxing district to refund payments of real property tax before the taxing district had exhausted its legitimate efforts in court to have the tax assessment affirmed or even increased. I therefore hold that the requirement for a taxing district to refund excess taxes pursuant to N.J.S.A. 54:3-27.2 does not become operative while the taxing district still has a right to have the judgment of assessment reduction reviewed.
Ud. at 64 (emphasis added).]
“Final judgment,” as utilized in N.J.S.A. 54:51A-8, has also been interpreted as judgment no longer subject to appeal. While that statute relates to the “freeze act”, the result is consistent with the issue under review herein. The freeze act permits a taxpayer to freeze or maintain at the same level the assessment achieved by a judgment received by said taxpayer for that year of the judgment, plus the next two succeeding years.[1] Obviously, the application of the freeze act could result in a refund of taxes to a taxpayer. In Tamburelli Properties Ass’n v. Cresskill Bor., 308 N.J.Super. 326, 705 A.2d 1270 (App.Div.1998), the Appellate Division stated with respect to the taxpayer’s motion to apply the freeze act to judgments received at trial while the municipality’s appeal from the Tax Court’s decision was pending:
A comparison of the language of the Tax Court Freeze Act, N.J.S.A. 54:51A-8, with the County Board of Taxation Freeze Act, N.J.S.A. 54:3-26, supports the *5 conclusion that the term “final judgment” in the Tax Court Freeze Act means a “judgment final,” that is, one no longer subject to further appeal.[2]
[Id. at 337, 705 A.2d 1270].
Authority is clear, in that a judgment reducing an assessment requires the municipality only to reduce the assessment, and does not require the payment of money. N.J.S.A. 54:3-27.2 is the sole authority governing the right of a taxpayer to retrieve tax refunds and interest based on overpayments. N.Y. Life v. Lyndhurst Tp., 280 N.J.Super. 387, 655 A.2d 481 (App.Div.1995). That statute, in referring to a period of time after a “final judgment,” has been interpreted consistently to mean a point in time wherein all appeals are exhausted.
Taxpayer next contends that N.J.S.A. 54:3-27.2, which requires all appeal rights to expire prior to refunding excess tax payments, conflicts with R. 2:9-5, which violates N.J. Const., art. VI, § 2, 113 (separation of powers). This section of the New Jersey Constitution states that the Supreme Court shall make rules governing the administration of all courts in the state and subject to law, practice and procedure in all such courts. Winberry v. Salisbury, 5 N.J. 240, 74 A.2d 406 (1950).[3] Taxpayer argues that the aforementioned statute (N.J.S.A. 54:3-27,2) effectively stays taxpayer’s alleged right to receive tax refunds, whereas the staying of a court judgment should be governed only by R. 2:9-5, which states:
A judgment or order in a civil action adjudicating liability for a sum of money or the rights or liabilities of parties in respect, of property which is the subject of an appeal or certification proceedings shall be stayed only upon the posting of a bond pursuant to R. 2:9-6 or a cash deposit pursuant to R. 1:13-3© unless the court otherwise orders on good cause shown.
This argument is without merit. As stated above, the Tax Court judgments received by taxpayer in the case at bar have not been stayed. Those judgments require a lower assessment for taxpayer’s properties for the years 1994 through 1998. The municipality complied with that judgment, and, in fact, has low *6 ered the assessments for those years. Therefore, nothing has been stayed. The issue dealing with the payment of refunds for overpaid taxes is properly governed by N.J.S.A. 54:3-27.2, which affords the taxpayer the right to receive refunds plus interest at such time as a final judgment is obtained. In fact, the Appellate Division, in N.Y. Life v. Lyndhurst Tp., supra, N.J.Super, at 388, 655 A.2d 481, indicates that this statute is the sole source of authority dealing with refunds due on overpayment of taxes. This, as well as the interpretation of the meaning of “final judgment,” (a point in time wherein all appeals have been exhausted) is substantive law. Consequently, since there has been no automatic stay, taxpayer could not have been deprived of a hearing to contest same.
Taxpayer also argues that N.J.S.A. 54:3-27.2 violates taxpayer’s procedural due process rights, contending that he has not received appropriate notice and an opportunity to be heard at a meaningful time and in a meaningful manner with respect to the collection of tax refunds and interest. Ramos v. City of Passaic, 19 N.J.Tax 97, 102 (Tax 2000); see also Doe v. Poritz, 142 N.J. 1, 662 A.2d 367 (1995). The Tax Court, in Ramos, states as follows:
Insofar as most rights are concerned, a state statute does not violate substantive due process if the statute reasonably relates to a legitimate legislative purpose and is not arbitrary or discriminatory. Briefly stated, if a statute is supported by a conceivable rational basis, it will withstand a substantive due process attack.

[Id. at 103 (emphasis added).]

In actuality, the very case relied upon by taxpayer, Arrow Mfg. Co. v. Town of West New York, 321 N.J.Super. 596, 729 A.2d 1061 (App.Div.1999), as well as others, prove that our courts recognize that a litigant has opportunities to be heard with respect to relief, pursuant to N.J.S.A. 54:3-27.2.[4]
Taxpayer contends that N.J.S.A. 54:3-27.2 violates substantive due process because it allows a losing litigant to forestall payment or force a settlement. Although under this statute, a litigant is not entitled to a refund of excess taxes or interest until sixty days after “final judgment,” there is a rational basis for this *7 language. Municipalities depend on tax revenue in order to survive. The Appellate Division, in Schneider v. City of East Orange, 196 N.J.Super. 587, 483 A.2d 839 (App.Div.1984), aff'd o.b., 103 N.J. 115, 510 A.2d 1118 (1986), cert. denied 479 U.S. 824, 107 S.Ct. 97, 93 L.Ed.2d 48 (1986), stated in part, “[t]he interest of the municipality in receiving timely payment of taxes is clearly significant and outweighs any incidental burden imposed upon plaintiffs, and other taxpayers similarly situated, by this jurisdictional burden.” Id. at 595, 483 A.2d 839 (citation omitted). In any event, N.J.S.A. 54:3-27.2 provides the taxpayer with interest calculated from the time the overpayment was made by taxpayer to the municipality. Said aggrieved taxpayer is at least being compensated for the municipality’s possession of taxpayer’s overpayment.
If the municipality were required to refund taxes once a trial court rendered its decision, prior to the expiration of the litigant’s appeal rights, the result would be to increase the risk of tax delinquencies. Furthermore, if a Tax Court judgment were reversed on appeal and the property owner did not repay the refunded taxes, the municipality would then have to enforce a lien to acquire its funds. This would cost the municipality even more money. Thus, there is clearly a rational basis for N.J.S.A. 54:3-27.2.
For the reasons set forth, taxpayer’s motion to compel refund of tax overpayments is hereby denied.
Based on this court’s determination as to taxpayer’s motion, municipality’s motion for a stay is denied without prejudice.

 There are exceptions to this statement, but the exceptions are not relevant to the issue herein.

 See also Brae Assocs. v. Park Ridge Bor., 19 N.J.Tax 316 (App.Div.2001).

See also Paulison Ave. Assoc v. City of Passaic, 18 N.J.Tax 101 (Tax 1999).

 See also Petrie Retail, Inc. v. Town of Secaucus, 19 N.J.Tax 356 (Tax 2001).