BIANCO, J.T.C.
This matter comes before the Tax Court on motion by plaintiff, Fifth Roc Jersey Associates, L.L.C. (“Fifth Roe”), to invalidate its 2009 added assessment through an application of N.J.S.A. 54:51A-8 (“the Freeze Act”) and compel a refund from defendant, Town of Morristown (“Morristown”), for the overpayment of taxes on its 2009 regular assessment. For the reasons more specifically set forth herein, Fifth Roe’s motion is granted.
A brief recitation of the procedural history is necessary to understand this matter. On August 10, 2007, the Tax Court entered judgment, pursuant to a stipulation of settlement, setting Fifth Roc’s 2007 regular assessment at $16,500,000. The property at issue consists of a Hyatt hotel located on Speedwell Avenue in Morristown, New Jersey, and designated by the taxing district as Lot 1.05 in Block 4901 (“the Subject Property”). On February 17, 2009, Fifth Roc moved to apply the Freeze Act to tax years 2008 and 2009. During oral argument held on March 20, 2009, the court found Morristown’s opposition to Fifth Roc’s motion “inadequate to preclude or prevent the application of the Freeze Act.”[1]
It was during oral argument that Fifth Roc first raised the issue of whether its 2008 added assessment was properly imposed on the Subject Property. Specifically, Fifth Roc alleged that the *219 work underlying the 2008 added assessment was not completed during the statutory timeframe for levying added assessments. Although Fifth Roc did not appeal its 2008 added assessment, the court nevertheless found that it could reach this issue through the Freeze Act. A plenary hearing was held on May 14, 2009 and June 8, 2009 to determine when the work underlying the 2008 added assessment was completed.
In a bench opinion delivered on June 8, 2009, the court invalidated the 2008 added assessment based on the certification of Morristown’s Tax Assessor, which stated that the work forming the basis for the added assessment was already completed during a September 2007 inspection.* [2] The Tax Court entered an order (dated June 8, 2009) applying the Freeze Act to tax years 2008 and 2009.
On appeal, the Appellate Division affirmed in an unpublished opinion dated June 8,2010. Morristown sought certification to the New Jersey Supreme Court which was denied on October 5, 2010.[3]
Thereafter, Fifth Roc filed the instant motion pursuant to the Freeze Act to invalidate the $8,000,000 added assessment for tax *220 year 2009 which was levied on or about October 9, 2009. In support of its motion, Fifth Roe argues that, although it did not appeal its 2009 added assessment (as provided by N.J.S.A. 54:4-63.11), the court can reach the validity of its added assessment through a Freeze Act application, pursuant to United States Postal Service v. Town of Kearny, 19 N.J.Tax 282 (Tax 2001), aff'd, 21 N.J.Tax 78 (App.Div.2002). Fifth Roc also asserts that the burden rests on Morristown to prove that the 2009 added assessment was properly imposed. Furthermore, Fifth Roe claims that it paid taxes on a 2009 regular assessment of $24,500,000, rather than $16,500,000, and is entitled to a refund pursuant to N.J.S.A. 54:3-27.2.
In opposition, Morristown asserts that: (i) Fifth Roc’s failure to appeal its 2009 added assessment deprives the Tax Court of jurisdiction; (ii) Fifth Roe bears the burden of demonstrating that the 2009 added assessment is invalid; and (iii) the Doctrine of Laches and Entire Controversy Doctrine bar the instant motion.
After oral argument, the court held a plenary hearing[4] to determine what work, if any, formed the basis for the 2009 added assessment. Fifth Roc called two witnesses, Thomas Blundell[5] (“Mr. Blundell”), General Manager of the Hyatt hotel, and Brian Fischer[6] (“Mr. Fischer”), Vice President of Fifth Roc. Morristown called its current Tax Assessor, Kevin Esposito[7] (“Mr. Esposito”).
Having heai’d the testimony, the court concludes that renovations to the hotel lobby, ballroom, and bar at the Subject Property *221 were completed in 2006.[8] Furthermore, room renovations began at the subject property on March 1, 2009 and were completed on January 11, 2010.[9] No guest room renovations were complete as of March 31, 2009, which was the “Date of Completion” listed on the Added Assessment Real Property Tax List for Year 2009.
Additionally the court finds that Schindler Elevator Corporation completed renovations to the Subject Property’s hotel elevators prior to October 1, 2008. Morristown produced an invoice from Cioffi Electric, LLC (“Cioffi”) dated March 18, 2009, which described work done on the hotel elevators at the Subject Property between December 24, 2008 and January 26, 2009. According to the invoice, Cioffi piped, wired, and installed elevator heat and smoke detectors at a total cost of $10,435.16.[10] While the Cioffi work was done between December 2008 and January 2009, the court is satisfied that the elevators were compliant and operating during that time.

ANALYSIS

a. Freeze Act
In real property tax appeals, the Freeze Act provides that when a final judgment issues:
*222 the judgment shall be conclusive and binding upon the municipal assessor and the taxing district ... for the assessment year and for the two assessment years succeeding the assessment year covered by the final judgment, except as to changes in the value of the property occurring after the assessment date ... [N.J.S.A. 54:51A-8 (emphasis added).] [11]
“The Freeze Act is mandatory ... [T]he Tax Court must apply it to bind the municipality____”[12] U.S. Postal Service v. Town of Kearny, 19 N.J.Tax 282, 289 (Tax 2001), aff'd, 21 N.J.Tax 78 (App.Div.2002); See Jack Nissim & Sons, Inc. v. Township of Bordentown, 10 N.J.Tax 464, 467 (Tax 1989).
Although the Freeze Act binds a property’s regular assessment for a freeze year, an “added assessment ... [may be] imposed for all or a portion of a freeze year ... based on a change in value occurring after October 1 preceding the freeze year.” Rockaway 80 Assoc., supra, 15 N.J.Tax at 332 (emphasis added); See N.J.S.A. 54:4-63.2 to -63.3; City of Newark v. Township of Vernon, 1 N.J.Tax 90, 95 (Tax 1980), aff'd, 179 N.J.Super. 332, 432 A.2d 106 (App.Div.1981).
N.J.S.A. 54:4-63.11 controls the time for filing “[a]ppeals from added assessments” and provides that challenges must be filed “on or before December 1 of the year of levy----”[13] The “right of appeal in tax eases is purely statutory and ... all *223 statutory requirements must be strictly complied with to invest the reviewing tribunal with subject matter jurisdiction.” Royal Bradley Assoc. v. Borough of Bradley Beach, 252 N.J.Super. 401, 403-04, 599 A.2d 1288 (App.Div.1991) (quoting, 18 Washington Place Assoc. v. City of Newark, 8 N.J.Tax 608, 614 (Tax 1986)).
Nevertheless, even in the absence of a direct appeal, the Tax Court in USPS reached the issue of whether an added assessment imposed in a freeze year was proper. USPS, supra, 19 N.J.Tax at 285; See Entenmann’s Inc. v. Borough of Totowa, 19 N.J.Tax 505, 519-20 (Tax 2001), aff'd, 21 N.J.Tax 182 (App.Div.2003) (“failure to appeal an added assessment did not preclude application of the Freeze Act where the added assessment was improperly imposed”).
In USPS, a stipulation of settlement resolved the underlying 1996 tax appeal. Id.[14] Thereafter, on October 1, 1996 the municipality imposed “a $1,000,000 added assessment ... against the taxpayer----” Id. The taxpayer did not appeal. Id. Instead, it filed a motion to apply the Freeze Act. Id. The court held a “plenary hearing[, which] established ... [that] the municipality inspected the property in the Spring of 1995, sometime after a substantial amount of the improvements were already in place.” Id. (emphasis added).
The court granted taxpayer’s motion to invalidate the added assessment, finding the underlying work was completed outside the statutory timeframe since “the record clearly indicate[d] that the improvements occurred before October 1, 1995.” Id. at 289 (emphasis added). On appeal, the Appellate Division affirmed. See USPS, supra, 21 N.J. Tax at 80.
Here, Morristown asserts that Rockaway 80 Assoc, stands for the proposition that a court cannot use the Freeze Act to reach the validity of an added assessment and therefore precludes review of Fifth Roc’s 2009 added assessment since it did not appeal. Rockaway 80 Assoc., supra, 15 N.J.Tax at 335. The *224 court rejects this argument and finds USPS controlling. See USPS, supra, 19 N.J.Tax at 289. The court in Rockaway 80 Assoc. found that “properly imposed added assessments” were excluded “from the scope of the” Freeze Act. Rockaway 80 Assoc., supra, 15 N.J.Tax at 335 (emphasis added). This is distinguishable from USPS which pertained to improperly imposed added assessments. USPS, supra, 21 N.J.Tax at 80. Accordingly, the court finds that it can reach the validity of the 2009 added assessment through the instant Freeze Act application.[15]
b. Burden of Proof & Presumption of Correctness
“In contesting the added assessment on its merits, taxpayer has the burden of proof to establish by a preponderance of the evidence that the assessment appealed from is invalid.” Otelsberg v. Township of Bloomfield, 18 N.J.Tax 243, 248 (Tax 1999); See New Jersey Foreign Trade Zone Venture v. Township of Mount Olive, 242 N.J.Super. 170, 173-74, 576 A.2d 303 (App.Div. 1990). “It is settled that there is a presumption of correctness of a tax assessment made by a local taxing authority.” Otelsberg, supra, 18 N.J.Tax at 248; See Glen Wall Assoc. v. Township of Wall, 99 N.J. 265, 273, 491 A.2d 1247 (1985).
In contrast, under the Freeze Act,
If the assessor increases the assessment or fails to reflect on the tax duplicate a county board of taxation or Tax Court judgment issued prior to the final preparation of the tax duplicate in either of the two years following the year for which the judgment of the Tax Court was rendered and if said judgment is a final judgment not subject to further appeal, the burden of proof is on the taxing district to establish that the assessor acted reasonably in increasing the assessment.
*225 [N.J.S.A. 54:51A-8 (emphasis added).]
In his June 8, 2009 bench opinion, Judge Kuskin determined (with regard to the 2008 added assessment) that
In order to defeat the Freeze Act the Municipality has a burden even though in the context of a regular assessment the assessment is entitled to a presumption of correctness. But the courts have held that when the question is whether the Freeze Act applies or not the burden shifts to the municipality to demonstrate that there was a change in value that supported or validated the increase in assessment.
(Transcript of Record at 86, Fifth Roc Jersey Assoc. v. Town of Morristown, (N.J.Tax filed June 8, 2009) (No. 003062-2007).]
Under those circumstances the presumption of validity seems to be tempered by considerations of the automatic application of the Freeze Act. And I find that analysis is applicable here. The presumption of validity that would normally apply to the $8 million added assessment is subject to and should be considered in the context of the well established law as to the automatic application of the Freeze Act and the burden of the Municipality to demonstrate that the Freeze Act should not apply.
[Id. at 87.]
The Appellate Division affirmed Judge Kuskin in an unpublished opinion dated June 8, 2010, where the court found that:
After determining that plaintiff overcame the presumption of validity for the added assessment and that defendant failed to meet its burden of showing a change in value to defeat the application of the Freeze Act, the Tax Court granted plaintiffs application and fixed the assessment for tax years 2008 and 2009 at $16,500,000.
[Fifth Roc Jersey Assoc. v. Town of Morristown, supra, 2010 WL 4120879, at *1, 2010 N.J.Super. Unpub. LEXIS 1251, at *3.]
Judge Kuskin determined that plaintiff met its burden of overcoming the assessment’s presumption of validity through the tax assessor’s affidavit that was entered into evidence. The burden then shifted to defendant to demonstrate a change in value to the property during the relevant period to defeat application of the Freeze Act. After viewing all of the relevant evidence, Judge Kuskin concluded that defendant had failed to meet that burden. Applying the holding in U.S. Postal Serv. v. Tenon of Kearny, 19 N.J.Tax 282 (Tax Ct.2001), aff'd, 21 N.J.Tax 282 [78] (App.Div.2002), Judge Kuskin held that the Freeze Act applied to invalidate the added assessment.
[Id. at *2, 2010 N.J.Super. Unpub. LEXIS 1251, at *4.]
The reasoning and conclusions in both the above-mentioned unreported decisions are based in sound legal theory and careful analysis and are herein adopted and incorporated by this court as its own. Accordingly, the same standard of proof will be applied here to the validity of the Subject Property’s 2009 added assessment, as was previously applied by the courts in Fifth Roc’s *226 challenge to the Subject Property’s 2008 added assessment via the Freeze Act.
c. Validity of the 2009 Added Assessment
N.J.S.A. 54:4-63.2 provides that when:
any parcel of real property contains any building or other structure which has been erected, added to or improved after October 1 in any year and completed before January 1 following, the assessor shall ... determine the taxable value ... [and] enter the amount of such assessment [as] ... an added assessment____
[Id, (emphasis added).]
Likewise, N.J.S.A. 54:4-63.3 provides that
when any parcel of real property contains any building or other structure which has been erected, added to or improved after October 1 and completed between January 1 and October 1 following, the assessor shall ... determine the taxable value ... [and] shall enter an ... added assessment----[16]
[Id. (emphasis added).]
An “added assessment for a freeze year, by definition, relates to improvements or additions performed after the October 1 valuation date." New Rock Investment Partners v. City of Elizabeth, 18 N.J.Tax 207, 212 (Tax 1999) (emphasis added).[17] Stated otherwise, “[a]dded assessments ... are permitted only when improvements are completed during the tax year for which such an assessment is made.” Borough of Freehold v. Nestle USA, 21 N.J.Tax 138, 149 (Tax 2003) (emphasis added).[18] The *227 “ ‘added assessment process is a refinement which sweeps into the system properties and improvements not assessable on October 1 of the pre-tax year. Its scope is precisely defined.’ ” Id. at 146 (quoting American Hydro Power Partners, L.P. v. City of Clifton, 239 N.J.Super. 130, 138, 570 A.2d 1246 (App.Div.), certif. denied, 117 N.J. 75, 563 A.2d 837 (1989)) (emphasis added).
“The mere retrofitting, upgrading, or remediation of deferred maintenance does not constitute ... an improvement.”[19] Harrison Realty Corp. v. Town, of Harrison, 16 N.J.Tax 375, 385 (Tax), aff'd, 17 N.J.Tax 174 (App.Div.1997), certif. denied, 153 N.J. 213, 708 A.2d 64 (1998). Moreover, improvements are “complete” when “substantially ready for the use for which it was intended.” N.J.S.A. 54:4-63.1.
In the instant matter, the valuation date for tax year 2009 was October 1, 2008. See N.J.S.A. 54:4-23. The evidence, which the court finds to be credible, indicates that Fifth Roc completed its: (i) guest room renovation project (including the ADA Rooms) in January 2010; (ii) lobby, ballroom, and bar renovations in 2006; and (iii) elevator renovations prior to October 1,2008.[20]
*228 Furthermore, between December 2008 and January 2009 there was only replacement work done on the hotel elevators. The Cioffi invoice listed that eighteen smoke detectors and six heat detectors were installed. The court finds that the addition of these smoke and heat detectors between December 24, 2008 and January 26, 2009 do not qualify as improvements to “a building or other structure,” within the meaning of N.J.S.A. 54:4-63.2 to - 63.3, since they merely constitute “retrofitting, upgrading, or remediation of deferred maintenance.” See Harrison Realty Corp., supra, 16 N.J.Tax at 385.
Fifth Roc has demonstrated that the 2009 added assessment was improperly imposed since it is clear that any work done at the Subject Property was either de minimus in nature or not within the statutory timeframe for levying added assessments. Furthermore, Morristown proffered little credible evidence to counter the compelling testimony of Fifth Roc’s witnesses and documentation, and has failed to demonstrate that the 2009 added assessment on the Subject Property was in any way appropriate.
d. Entire Controversy Doctrine
R. 4:30A provides that the “[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims----” Id. The rule requires, “as a general matter, that all aspects of the controversy between those who are parties to the litigation be included in a single action.” Comment 1 to R. 4:30A; See Higgins v. Thurber, 413 N.J.Super. 1, 12, 992 A.2d 50 (App.Div.2010), aff'd, 205 N.J. 227, 14 A.3d 745 (2011). Nevertheless, the “doctrine does not apply to unknown or unaccrued claims.” DiTrolio v. Antiles, 142 N.J. 253, 273-74, 662 A.2d 494 (1995) (emphasis added); See Comment 3.3 to R. 4:30A; K-Land Corp. No. 28 v. Landis Sewerage Auth., 173 N.J. 59, 70, 800 A.2d 861 (2002).
The “ ‘polestar for the application of the entire controversy [doctrine] is judicial fairness.’ ” K-Land Corp., supra, 173 N.J. at 74, 800 A.2d 861 (quoting Reno Auto Sales, Inc. v. Prospect Park Sav. & Loan Assoc., 243 N.J.Super. 624, 630, 581 A.2d 109 *229 (App.Div.1990)) (citations omitted). Accordingly, the Appellate Division held in Cafferata v. Peyser, 251 N.J.Super. 256, 260, 597 A.2d 1101 (App.Div.1991) (emphasis added), that “it is well settled that [the entire controversy doctrine] does not bar transactionally related claims of which a party was unaware during the pendency of the prior litigation.”
Here, Morristown argues that Fifth Roc’s instant motion should have been joined with its initial Freeze Act application in February 2009 since both motions seek to apply the provisions of the Freeze Act to the 2007 Judgment. However, the 2009 added assessment was not even levied until nearly eight months after Fifth Roc filed its initial Freeze Act application. Furthermore, oral argument was heard, a plenary hearing was held, and a court decision was made on that motion all prior to the imposition of the 2009 added assessment on the Subject Property. Accordingly, the court finds that the Entire Controversy Doctrine does not bar Fifth Roc’s instant motion since the 2009 added assessment did not exist at the time of the initial Freeze Act application was filed, heard, and decided. See Cafferata, supra, 251 N.J.Super, at 260, 597 A.2d 1101; Comment 3.3 to R. 4:30A.
e. Doctrine of Laches
The Doctrine of Laches applies “to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party.” Knorr v. Smeal, 178 N.J. 169, 181, 836 A.2d 794 (2003) (emphasis added). The “Freeze Act” has “no specified time limitation____ Since there exists no applicable statute of limitations [courts] must [] ascertain whether the facts presented [] justify the imposition” of the Doctrine of Laches. Jack Nissim & Sons, Inc., supra, 10 N.J.Tax at 468.
To determine whether the Doctrine of Laches applies, the court must weigh the “length of the delay, the reasons for delay, and the ‘changing conditions of either or both parties during the delay’ ”. Knorr, supra, 178 N.J. at 181, 836 A.2d 794 (quoting Lavin v. Board of Education, 90 N.J. 145, 152, 447 A.2d 516 *230 (1982)). There “must be a delay for a length of time which, unexplained and unexcused, is unreasonable under the circumstances and has been prejudicial to the other party.” West Jersey Title & Guaranty Co. v. Industrial Trust Co., 27 N.J. 144, 153, 141 A.2d 782 (1958) (emphasis added).
Morristown contends that the Doctrine of Laches applies since Fifth Roc knew of the 2009 added assessment, failed to appeal before the December 1, 2009 statutory deadline, and waited twelve months therefrom to file the instant application. See N.J.S.A. 54:4-63.11. According to Morristown, its “financial viability will be irreparably harmed” since Fifth Roe’s delay “lead [it] to believe ... that the 2009 added assessment was final ... [and it] adopted a municipal budget and made certain expenditures during the 2010 year without a reason to believe that the validity of the 2009 added assessment could be challenged____” The court rejects Morristown’s contentions.
It was reasonably foreseeable that Fifth Roe would move to invalidate its 2009 added assessment through the Freeze Act given the Tax Court’s June 8, 2009 ruling and the Appellate Division’s June 8, 2010 affirmance (without the necessity of filing an added assessment appeal).[21] Clearly there was no guarantee that Morristown would prevail on appeal; the possibility of further action by Fifth Roc was always looming and should have been anticipated by Morristown. Furthermore, the court is satisfied that the timing of Fifth Roc’s motion is not unreasonable despite the passage of twelve months (December 2009 to December 2010) after the jurisdictional date for appealing 2009 added assessments. See West Jersey Title, supra, 27 N.J. at 153, 141 A.2d 782. Just two months had elapsed between the New Jersey Supreme Court’s denial of certification in October 2010 and the filing of the instant motion in December 2010; again, Morristown should have *231 anticipated that it may not have prevailed in bringing the matter before the Supreme Court, and that further action by Fifth Roc would ensue if Morristown was unsuccessful. Morristown has simply failed to demonstrate that it has been prejudiced by the actions of Fifth Roc in filing the present motion. Accordingly, the court finds the Doctrine of Laches inapplicable.
f. Refund
Fifth Roc seeks a refund in the amount of $202,240 it claims it overpaid in taxes on the Subject property for the 2009 tax year. N.J.S.A. 54:3-27.2 provides that:
[ijn the event that a taxpayer is successful in an appeal from an assessment on real property, the respective taxing district shall refund, any excess taxes paid, together with interest thereon from the date of payment at a rate of 5% per annum, less any amount of taxes, interest, or both, which may be applied against delinquencies ... within 60 days of the date oí final judgment.
[Id. (emphasis added).]
“ ‘[Fjinal judgment’ has been interpreted consistently to mean a point in time wherein all appeals are exhausted.” Universal Folding Box Co., Inc. v. City of Hoboken, 20 N.J.Tax 1, 5 (Tax), aff'd, 351 N.J.Super. 227, 798 A.2d 100 (App.Div.), certif. denied, 174 N.J. 545, 810 A.2d 64 (2002).
In Universal Folding, a taxpayer received “judgments ... reducing [its] assessments” and, during the pendency of the municipality’s appeals, “move[d] to compel the municipality to pay all tax refunds resulting from the reduced assessments.” Id. at 2. The court found that the “judgments merely required the municipality to reduce each of the assessments ... Those judgments did not order payment of tax refunds by the municipality to the taxpayer.” Id. at 3 (emphasis added). Stated otherwise, a “judgment reducing an assessment requires the municipality only to reduce the assessment, and does not require the payment of money.” Id. at 5 (emphasis added).
Rather, “N.J.S.A. 54:3-27.2 is the sole authority governing the right of a taxpayer to retrieve tax refunds” and “controls the next stage of the proceeding----” Id. at 3. “[D]ecisional authority interpreting]” N.J.S.A. 54:3-27.2 “clarifies] that refunds be paid *232 only after appeal rights have expired.”[22] Id. at 4 (emphasis added); See Wilshire Selby West, Ltd. v. Borough of Ramsey, 6 N.J.Tax 60, 64 (Tax 1983).
Here, the Tax Court’s June 8, 2009 order applied the Freeze Act to 2008 and 2009. The Appellate Division affirmed, and on October 5, 2010, the New Jersey Supreme Court denied Morristown’s application for certification. Although Morristown argues that Fifth Roc is not entitled to a refund since it failed to either file an action in lieu of prerogative writ or appeal the May 5, 2009 Judgment, this argument is without merit. N.J.S.A. 54:3-27.2, not an action in lieu of prerogative writ, “is the sole source of authority dealing with refunds due on [the] overpayment of taxes.” Universal Folding, supra, 20 N.J.Tax at 6. Furthermore, Morris-town also had the opportunity to raise the issue of the Board’s May 5, 2009 Judgment on appeal and either failed to do so, or failed to convince the Appellate Division that the Freeze Act should not apply to 2009.
Moreover, the court does not find that Fifth Roe’s motion for a refund was unreasonably delayed. See Jack Nissim & Sons, Inc., supra, 10 N.J.Tax at 472 (Although 20 months passed between “the date of entry of the base-year judgment and the filing of [taxpayer’s] motion” this amount of time “was not unduly long nor unreasonable” since, on the date of judgment, the municipality “knew ... that [the taxpayer] was entitled to a refund of its [ ] taxes”).
According to Fifth Roc, $619,360 was paid in taxes to Morristown during the 2009 tax year.[23] While, Morristown’s Tax Collector certified that Fifth Roc paid taxes on a 2009 regular *233 assessment of $16,500,000, however, the amount Fifth Roc claims to have paid was not disputed.[24] The court calculated that $619,360 is the amount of taxes owed which results from an assessment of $24,500,000 after applying the 2009 tax rate of 2.528 per $100 of assessed value.[25] If the 2009 regular assessment on the Subject Property was $16,500,000 as Morristown claims, the court calculated that the amount of taxes owed would have been $417,120.[26] The difference in the two amounts is exactly what Fifth Roc claims it overpaid in taxes, ie. $202,240.
The court is convinced that Fifth Roc over paid its taxes on the Subject Property which were based upon an assessment of $24,500,000 instead of $16,500,000. Accordingly, since the 2009 regular assessment is “no longer subject to further appeal”, Universal Folding, supra, 20 N.J.Tax at 4, and pursuant to N.J.S.A. 54:3-27.2, the court finds that Fifth Roc is entitled to a tax refund of the $202,240, plus statutory interest. The parties are hereby ordered to submit calculations to the court pursuant to R. 8:9-4.

CONCLUSION

For the reasons set forth hereinabove, Fifth Roc’s motion is granted. The court concludes that the $8,000,000 added assessment levied on the Subject Property for tax year 2009 is invalid and is accordingly vacated. Furthermore, the court finds that Fifth Roc has overpaid taxes due on the Subject Property for tax year 2009 in the amount of $202,240. Morristown shall refund that amount, plus statutory interest to Fifth Roc (subject to calculations pursuant to R. 8:9-4). The court retains jurisdiction.
*234 The Tax Court Clerk/Administrator shall enter judgment consistent with this opinion.

 Transcript of Record at 25, Fifth Roc Jersey Assoc., L.L.C. v. Town of Morristown, (N.J.Tax, March 20, 2009) (No. 003062-2007). During oral argument the judge noted "that the assessment for tax year 2009 is the total amount of $16,500,000, the same amount as the settlement judgment for tax year 2007." Id. The judge then rejected Morristown’s argument that "the Freeze Act Motion is moot because the relief that would be obtained as a result of the motion has already been provided in the form of the assessment ... [finding that] ... the *219 assessor still [had] the opportunity to appeal for tax year 2009.” Id. at 29. Morristown did in fact appeal to the Morris County Board of Taxation ("the Board”), and on May 5, 2009 judgment was entered (mailed on June 3, 2009) increasing the Subject Property’s 2009 regular assessment to $24,500,000. That judgment was not appealed by Fifth Roc. Irrespective, the court is satisfied that jurisdiction over the matter was properly before the Tax Court and not the Board since the Freeze Act motion for tax year 2009 arose out of a 2007 Tax Court appeal, and was pending before the court at the time the Board issued its judgment. See City of Atlantic City v. Greate Bay Hotel and Casino, Inc., 304 N.J.Super. 457, 701 A.2d 458 (App.Div.1997) (finding that "[wjhen there is a timely and proper filing of a complaint in the Tax Court, the County Board of Taxation has no jurisdiction over the matter, even if a petition had been filed with the County Board before the filing of the complaint in the Tax Court.")

 The court found the work outside of the statutory timeframe for added assessments since it was completed before October 1, 2007. See N.J.S.A. 54:4-63.2 and-63.3.

 See Fifth Roc Jersey Assoc. v. Town of Morristown, A-5643-08T3, 2010 WL 4120879, at *1, *2, 2010 N.J.Super.Unpub. LEXIS 1251, at *2, *5 (App.Div. June 8, 2010), certif. denied, 204 N.J. 38, 6 A.3d 441 (2010).

 The court heard oral argument and carried the motion to allow Fifth Roc and Morristown time to conduct discovery regarding the 2009 added assessment. The purpose of the plenary hearing was solely to address whether the 2009 added assessment was properly imposed.

 Mr. Blundell began as General Manager in November 2008 and "oversee[s] day to day operations of the entire hotel."

 Mr. Fischer has been Vice President of Fifth Roc since 1988 and is responsible for overseeing all operations at the hotel, including renovations.

 Mr. Esposito was presented as a custodial fact witness to authenticate documents. He was not the Tax Assessor who placed the 2009 added assessment on the Subject Property and therefore offered no testimony in that regard.

 Fifth Roc produced an application and certification for payment from the contractor, Unity Construction Services, Inc., dated May 4, 2006. Morristown produced a certificate of approval, a certificate of occupancy, a project inspection activity report, a building sub-code approval, a plumbing sub-code approval, and an electrical sub-code approval. Although issued, inspected, or approved between February 2009 and March 2009, the work detailed therein related to renovations completed in 2005 and 2006.

 There are 13 guest floors at the Subject Property. As part of the renovation project, Fifth Roc also renovated rooms to be compliant with the Americans with Disabilities Act ("ADA Rooms"). See 42 U.S.C. §§ 12101 to -12213. The ADA Room renovations also began in March 2009 and were completed in January 2010.

 Specifically, the Cioffi invoice indicates that a heat detector was installed in each of the five elevator shafts, a heat detector and smoke detector was installed in each of the five elevator pits, a CTI module was installed, three smoke detectors were installed in the P-4 elevator machine room, and ten smoke detectors were installed in the penthouse elevator machine room.

 In analyzing the Freeze Act, courts have referred to the "assessment year covered by the final judgment” as the base year and called the "two assessment years succeeding the assessment year covered by the final judgment" the freeze years. See Coastal Eagle Point Oil Co. v. Twp. of West Deptford, 353 N.J.Super. 212, 215, 801 A.2d 1199 (App.Div.2002); Rockaway 80 Assoc. v. Rockaway Twp., 15 N.J.Tax 326, 331 (Tax 1996); Cumberland Arms Assoc. v. Burlington Twp., 10 N.J.Tax 255, 272 (1988).

 The "design of the Freeze Act is to remedy 'repeated yearly increases in the assessed value of property ... [and prevent] harassment of the taxpayer, subjecting him to the trouble and expense of annual appeals____”' Rockaway 80 Assoc., supra, 15 N.J.Tax at 330 (quoting Union Minerals & Alloys Corp. v. Town of Kearny, 13 N.J.Tax 114, 117 (App.Div.1992)).

 N.J.S.A. 54:4-63.11 allows added assessment appeals to be filed "on or before December 1 ... or 30 days from the date the collector of the taxing district completes the bulk mailing of tax bills for added assessments, whichever is later____"

 Tax year 1996 valuation date was October 1, 1995. See USPS, supra, 19 N.J.Tax at 285; See also N.J.S.A. 54:4-23.

 The court further rejects Morristown’s contention that the present matter is not a Freeze Act issue, since the 2009 added assessment had not yet been imposed at the time that the Tax Court granted Freeze Act relief for years 2008 and 2009, this argument. An added assessment may be imposed up to a year after a municipality has placed a regular assessment on a property. Requiring a taxpayer to wait to file a Freeze Act application until after the time has lapsed for levying an added assessment is contrary to the "mandatory and self-executing nature of the Freeze Act____" Grandal Enterprises, Inc. v. Borough of Keansburg, 292 N.J.Super. 529, 537, 679 A.2d 193 (App.Div. 1996) (quoting Clearview Gardens Assoc. v. Township of Parsippany-Troy Hills, 196 N.J.Super. 323, 329, 482 A.2d 523 (App.Div.1984)).

 The "purpose of the added assessment statutes is: 'to permit the taxation of real property which becomes taxable during the year following the assessment date of October 1, in order to avoid having properties escape taxation until the next assessment date arrives.” Rockaway 80 Assoc., supra, 15 N.J.Tax at 332 (quoting Snyder v. Borough of South Plainfield, 1 N.J.Tax 3, 7 (Tax 1980)) (emphasis added).

 An "increase in assessment based upon a change in value resulting from work completed prior to the October 1 preceding the freeze year may not be imposed by an added assessment____” Rockaway 80 Assoc., supra, 15 N.J.Tax at 332 (emphasis added); See Job Haines Home for the Aged v. Township of Bloomfield, 19 N.J.Tax 408, 420 (Tax 2001), aff'd, 20 N.J.Tax 137 (App.Div.2002) (for setting regular assessments, "real property must be valued as of October 1 of the pre-tax year”).

 "N.J.S.A. 54:4-63.3 does not permit added assessments for the year in which an improvement is discovered." Freehold, supra, 21 N.J.Tax at 153 (emphasis *227 added). In fact, the “courts of this State have prohibited the use of ... added assessments to reflect a change in opinion as to the value of property on the regular assessment date." Id, at 148 (emphasis added).

 See Otelsberg, supra, 18 N.J.Tax at 251-52, "declinefing] to adopt the Tax Court’s interpretation in Harrison Realty Corp., which found ‘improved’ to mean solely physical additions to the property.” However, the court in Otelsberg did “distinguish!] improvements that are retrofitting, upgrading, or remediation [si from those improvements that substantially increase the value of the property.” Id. at 252 (emphasis added).

 Although Morristown produced a certificate of occupancy dated February 12, 2009, the "description of work” lists “2/25/05”. In Lowe’s Home Centers, Inc. v. City of Millville, 25 N.J.Tax 591, 600 (Tax 2010), the court found that the " [[Issuance of a certificate of occupancy alone is not a determinative factor ... [and] is not an official determination that the structure is substantially ready for its intended use.” See Beranto Towers v. City of Passaic, 1 N.J.Tax 344, 349 (Tax 1980); B.P.U.M. Development and Urban Renewal Corp. v. City of Camden, 9 N.J.Tax 490, 503 (Tax 1988), aff'd, 11 N.J.Tax 95 (App.Div.), certif. denied, 118 N.J. 201, 570 A.2d 963 (1989); See also Township of Howell v. Monmouth Cty. Bd. of Taxation, 18 N.J.Tax 149, 165 (Tax 1999).

 The court recognizes that at some point, "litigation must come to an end.” Velasquez v. Franz, 123 N.J. 498, 538, 589 A.2d 143 (1991). However, the two months between October 2010 and December 2010 is not, in this court's view, an "inexcusable and unexplained delay____" Knorr, supra, 178 N.J. at 181, 836 A.2d 794.

 The "application of the freeze act [can] result in a refund of taxes,” but "[i]f the municipality were required to refund taxes once a trial court rendered its decision, prior to the expiration of the litigant’s appeal rights, the result would be to increase the risk of tax delinquencies.” Universal Folding, supra, 20 N.J.Tax at 4, 7.

 Fifth Roc paid $143,815 on Feb. 3, 2009; $143,815 on April 29, 2009; $164,885 on July 22, 2009; and $166,845 on Oct. 19, 2009; totaling $619,360.

 The Tax Collector provided a copy of the 'Tax Year 2009 Real Property Extended Tax Duplicate', which listed the taxable value of the subject property as $16,500,000, the document was undated.

 $24,500,000 assessment/100 = 245,000 x 2.528 (2009 tax rate per $100 of assessed value) = $619,360 in taxes.

 $16,500,000 assessment/100 = 165,000 x 2.528 (2009 tax rate per $100 of assessed value) = $417,120 in taxes.