MENYUK, J.T.C.
These actions were brought by plaintiff Freehold Borough and appeal the omitted added assessment in the amount of $1 for tax year 2000 and the added assessment in the amount of $1 for tax year 2001 made against property owned in Freehold Borough by defendant Nestle USA (“Nestle”). Nestle has moved for summary judgment voiding the assessments in issue and dismissing the complaints, on the ground that any increases in value attributable to improvements made to the subject property should have been included in the regular assessment for the tax years in issue. Nestle alleges that the assessor’s utilization of the omitted and added assessment procedures was an attempt to manipulate and extend the time for municipal appeals seeking an increase of the assessments on the subject property.
This motion was the subject of a prior letter opinion to the parties, substantial portions of which are incorporated here, in which I concluded that I was unable to decide the motion because the completion dates of the various improvements giving rise to the assessments in issue were unknown. Because neither party *141 had directly raised the issue, I asked for further briefing on the issue of whether added assessments are invalid as a matter of law when they are made in a fictitious amount and for specific tax years where the assessor has not made a determination as to the completion dates of the improvements. After reviewing the supplemental briefs and hearing additional oral argument, I now conclude that the omitted added assessment for tax year 2000 and the added assessment for tax year 2001 should be voided.
The subject property is a food processing/manufacturing facility designated as Block 93, Lots 1.02 and 2 though 5, and Block 87, Lot 1.01 on plaintiffs tax map. The original assessments for both years in issue, 2000 and 2001, were as follows:
Land $ 1,210,500
Improvements $13,289,500
Total $14,500,000
The contested omitted added and added assessments are as follows:
Assessment Months Assessed Prorated Assessment
2000 Omitted Added $1 12 $1
2001 Added $1 12 $1
The Chapter 123 ratio was 95.09 for tax year 2000 and 91.30 for tax year 2001.
Nestle relies upon the deposition testimony of plaintiffs assessor for the facts surrounding the making of the assessments in issue. The assessor testified that he is generally alerted to the possibility that an added assessment may be required when he receives copies of building permits and, later, certificates of occupancy from the municipal building department. He reviews the description of a project set forth on a building permit in order to make an initial determination of whether value might be added to a property as a consequence of the construction. No further action is taken by the assessor when he determines that a project will not increase the value of the property. The assessor said, for example, that he would not follow up a permit to re-run some electrical wiring, since, in his judgment, that type of project would be unlikely to add value to a building.
*142 When the building permit indicates the undertaking of a more substantial project that may affect the value of the property, the assessor does not track the progress of the construction through periodic inspection or otherwise. Rather, he waits until he receives a copy of the certificate of occupancy upon completion of the project. He then reviews the current assessment on the property to see if it is assessed correctly, and inspects the property to see whether the work described on the building permit conforms to the work that was actually done, and to determine whether the completed work would affect the assessment.
If he determines that a project has added value to a property, he calculates the amount of the added assessment. In the case of residential properties, the assessor generally uses computer assisted mass appraisal software. In the case of a commercial property, the assessor testified that he would consider the three usual approaches to the valuation of property, that is, cost analysis, sales comparison analysis and income capitalization analysis, and use one or more of those approaches to arrive at the value of the property after the improvement. That value less the existing assessment would comprise the assessor’s added assessment.
The assessor is required to transmit by computer the record of an added assessment to the county board of taxation shortly before October 1 of the tax year. Thereafter, the county board prepares an added assessment list from those records.
Plaintiffs assessor became aware[1] of projects being undertaken by Nestle at the subject property when he received copies of a series of building permits for various projects at the site that had been taken out by Nestle during 1997, 1998 and 1999.[2] The *143 assessor determined that at least some of the permits indicated that the value of the subject property might change as a consequence of the projects described on the permits and that an inspection would be required.
The assessor testified that the proper assessment of the subject property was beyond his ability. He therefore sought assistance from other sources. He first contacted the Division of Taxation, which was unable to help him. He then solicited and received proposals from two appraisal firms and asked plaintiff for funding sometime in early 2000. The request was made through plaintiffs attorney, and the assessor subsequently met with plaintiffs administrator to discuss the request. The assessor was advised that the municipality did not have the money at that time to fund a contract for an outside firm to evaluate the work performed at the Nestle facility. During the following year, 2001, he made the same request and at that time plaintiff provided funds to hire an outside expert.
Plaintiff retained an appraisal firm in 2001,[3] and the appraiser toured the facility several times. In September 2001, prior to the deadline for transmitting added assessments to the county board of taxation, the assessor contacted the appraisal firm to find out if it had finished valuing the property. He was advised that it had not, but the appraiser was able to confirm that there had been a significant increase in value over the current valuation of the subject property, although the appraiser was not able to quantify the amount of the increase at that time.
*144 Although the appraiser did not indicate whether the increase in value was attributable to the work that had been performed at the subject property or to general market inflationary trends, the assessor testified that he had toured the facility with the appraiser and as of September 2001, was confident that at least some of the increased value was a result of the construction described in the building permits. The assessor conceded in his deposition that there might have been value added to the property as early as October 1, 1999, but that he did not have the expertise to be able to value the property and establish a fair market value for the subject property at that time. Moreover, he testified that, even as of the date of his deposition, June 19, 2002, he was unable to specify which projects resulted in the 2000 omitted added assessment and which projects resulted in the 2001 added assessment. Nevertheless, the assessor testified that, because he knew in September 2001 that an added assessment in some unknown amount was indicated, he made an omitted added assessment for tax year 2000 and an added assessment for tax year 2001, each in the amount of $1.00. Plaintiff appealed the assessments to the Monmouth County Board of Taxation, which affirmed them, and then appealed the Board’s judgments to this court.[4]
Relying on Glen Pointe Associates v. Teaneck Tp., 10 N.J.Tax 598 (1989), aff'd o.b. per curiam, 12 N.J.Tax 127 (Super.Ct.App.Div.1991), Nestle moved for summary judgment. In Glen Pointe Associates, the assessor made an added assessment valuing improvements completed in September 1984 at $7,840,000. The added assessment was prorated for the last three months of 1984 resulting in an added assessment in the amount of $1,960,000. For tax year 1985, the assessor made a regular assessment, which *145 did not include the value of the completed improvements. The assessor apparently discovered the error sometime in 1985 and imposed an added assessment for the entire 12 months of 1985 in the amount of $7,840,000. The Tax Court voided the added assessment for 1985, finding:
The assessor simply failed to consider the lull value of the subject as of the assessing date, October 1, 1984, for tax year 1985. The situation is simply an erroneous determination of value on the assessing date which the assessor attempts to correct administratively at a later date. The only way to remedy such an incorrect determination is for the taxing district to file an appeal with the county board (or with the Tax Court if the assessment exceeds $750,000) pursuant to N.J.S.A. 54:3-21.
[10 N.J.Tax at 601].
Nestle contended that the admittedly fictitious $1 omitted added and added assessments were also invalid attempts to increase erroneous valuations of the subject property as reflected in the regular assessments for tax years 2000 and 2001. It asserted that the omitted added assessment for 2000 and the added assessment for 2001 were imposed solely to extend the time for plaintiff to contest the value of the improvements constructed at some time prior to September 2001 and that plaintiff should properly have appealed the regular assessments for those tax years within the time permitted by N.J.S.A. 54:3-21. Nestle asked this court to void the contested assessments.
The only evidence submitted by the plaintiff in opposition to Nestle’s motion was an appraisal report dated December 7, 2001, prepared by the appraisal firm retained by the plaintiff. The report sets forth the appraiser’s opinion of the value of the subject property as of October 1, 2000, the relevant assessment date for tax year 2001. The appraisal indicates that the market value of the property as of that date was $38,000,000, significantly higher than the regular assessment of $14,500,000 placed on the property for tax year 2001.
Plaintiff initially asserted that summary judgment should not be granted because Nestle failed to show that no genuine issue of material fact exists. R. 4:46-2(c) provides that an order of summary judgment shall be rendered “if the pleadings, depositions, answers to interrogatories and admissions on file, together *146 with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” Plaintiff, however, failed to identify any issue of material fact. “By its plain language, Rule 4:46-2 dictates that a court should deny a summary judgment motion only where the party opposing the motion has come forward with evidence that creates a ‘genuine issue as to any material fact challenged.’” Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 529, 666 A.2d 146, 150 (1995).
The additional briefing that I directed confirms that neither party disputes the fact that, at the time he made the assessments in issue, the assessor did not know when any particular improvement to the subject property had been completed. I may therefore decide whether the assessments were invalid as a matter of law, and the matter is ripe for summary judgment.
The gravamen of Nestle’s motion is that the assessor’s method of reflecting additional value was invalid. The assessor is authorized to make an added assessment “when any parcel of real property contains any building or other structure which has been erected, added to or improved after October 1 and completed between January 1 and October 1 following.” N.J.S.A. 54:4-63.3[5]. The added assessment is imposed for the tax year in which the improvement is completed, and is prorated for the months remaining in the calendar year following completion of the project. Ibid.
“The purpose of the added assessment law is to permit the taxation of real property which becomes taxable during the year following the assessment date of October 1, in order to avoid having properties escape taxation until the next assessment date arrives.” Snyder v. South Plainfield Bor., 1 N.J.Tax 3, 7 (1980). “[T]he added assessment process is a refinement which sweeps into the system properties and improvements not assessable on October 1 of the pre-tax year. Its scope is precisely defined.” *147 American Hydro Power Partners, L.P. v. Clifton City, 239 N.J. Super. 130, 138, 570 A.2d 1246, 1250 (App.Div.1989).
The omitted added assessment for tax year 2000 was made pursuant to the omitted assessment statute, N.J.S.A. 54:4-63.31, which provides:
In any tax year or in the next succeeding tax year the assessor of any taxing district, may in accordance with the provisions of this act, assess any taxable property omitted from the assessment list for the particular tax year. The taxable value of such property shall be determined as of October 1 of the preceding year.
It is well settled that the omitted assessment statute may be used where the assessor has failed to make an added assessment on an improvement to real estate following completion of construction. In re N.Y. State Realty & Terminal Co., 21 N.J. 90, 98, 121 A.2d 21, 25 (1956); Boardwalk Props, v. City of Atlantic City, 5 N.J.Tax 192, 198 (1983). A so-called “omitted added” assessment is consistent with the purpose of the omitted assessment statute, which is to remedy the inequity that would result if no taxes could be collected on property which is taxable but through error, has been omitted from assessment. In re N.Y. State Realty & Terminal Co., supra, 21 N.J. at 97, 121 A.2d at 24-25.
The Legislature has nevertheless imposed time limitations on the making of omitted assessments: they may be imposed in the year in which the property should have been assessed or in the next succeeding year. In the case of In re N.Y. State Realty & Terminal Co., supra, for example, a partial assessment was placed on a building under construction as of October 1,1951 for tax year 1952. The building was completed in June 1952, and no added assessment was made for that tax year. For tax year 1953, the property was assessed by the State as Class II railroad property under the Railroad Tax Law of 1948, N.J.S.A. 54:29A-1 to -77, and was not assessed locally. In re N.Y. Realty & Terminal Co., supra, 21 N.J. at 92, 121 A.2d at 21-22. The Court upheld an omitted added assessment made in 1953 for tax year 1952. In that case, the added assessment should have been made in 1952 under the added assessment law, N.J.S.A. 54:4-63.3, but the municipality was permitted to impose the added assessment under *148 the omitted assessment law in 1953, the year succeeding that in which the added assessment should have been made. The Court explained that, “[a]n added improvement by not being included in the tax assessment rolls pursuant to the procedure and during the time prescribed by the added assessment statutes thus becomes an omitted assessment and is governed by the provisions of [the omitted assessment statute].” In re N.Y. Realty & Terminal Co., supra, 21 N.J. at 99, 121 A.2d at 25.
As Nestle correctly asserts, the courts of this State have prohibited the use of omitted and added assessments to reflect a change in opinion as to the value of property on the regular assessment date. In Coastal Eagle Point Oil Co. v. West Deptford Tp., 19 N.J.Tax 123, 129 (1999), aff'd per curiam, 19 N.J.Tax 301 (Super.Ct.App.Div.2001), the issue was whether an omitted assessment was valid where it represented the difference in the value of certain machinery and equipment assessed as personal property pursuant to a statutory formula and the value of the same machinery and equipment which had been assessed as real property and included in the regular real property assessment. The court determined that the only effect of the omitted assessment was to change the value at which the property had been assessed originally, and therefore cancelled the assessment. Id. at 130.
In 200 43rd Street, L.L.C. v. City of Union City, 16 N.J.Tax 138 (1996), the court found omitted assessments to be invalid where the assessor had consciously determined to assign a zero value to the partially completed improvements in the regular assessment for 1994 and 1995 because of a sewer moratorium. In February 1995, the assessor learned that the moratorium had been lifted in January 1994, and in September 1995 he made omitted assessments for the improvements for tax years 1994 and 1995. Relying principally on Glen Pointe Associates, supra, for the principle that the omitted assessment procedure may not be used to correct an assessor’s erroneous determination of value, the court held:
The assessor’s failure to make an assessment for improvements on the subject property for 1994 and 1995 was not an oversight; it was a deliberate judgment that the improvement had no value. The omitted assessment law may not be used to *149 increase the assessed value on an improvement merely because the factual basis of the prior assessment no longer exists.
[Id. at 142].
Moreover, the court noted that, “had the assessor chosen to assess the improvement at a nominal amount, such as $100, the outcome would be the same.” Id. at 142, n. 4.
See also Boardwalk Props. v. City of Atlantic City, supra, 5 N.J.Tax at 198, which held that a partial assessment could be imposed pursuant to the omitted assessment statute where there was no evidence that the assessor had considered the improvements on the subject property at the time of the regular assessment and had concluded at that time that they had no value. The court noted, however, that:
If there were such evidence before the court, plaintiffs motion would have to be granted. In the latter event the assessor would in fact be using the omitted assessment statute to avoid the time requirements of the appeal process.

[Ibid.]

Nestle’s motion is based on the premise that the assessor failed to include the various improvements in the regular assessments for tax years 2000 and 2001, and instead employed the added and omitted added assessment mechanism to provide the plaintiff with more time than provided by N.J.S.A. 54:3-21 within which to appeal the fictitious $1 assessment of those improvements. If the value of the subject property had increased by virtue of the improvements (or for any other reason) by October 1 of 1999, then that value should have been incorporated in the regular assessment for 2000, and plaintiff would have been obliged to appeal by April 1, 2000. N.J.S.A. 54:3-21. See also, N.J.S.A. 54:4-23, which requires the assessor to determine the full and fair value of real property in the taxing district as of October 1 of the pretax year. Similarly, any value added to the property by October 1 of 2000 should have been included in the regular assessment for 2001. Added assessments and omitted added assessments are permitted only when improvements are completed during the tax year for which such an assessment is made. N.J.S.A. 54:4-63.2 and -63.3.
*150 The difficulty here is that, at the time of the making of the assessments in issue, and even as late as the time of his deposition in June 2002, the assessor did not know when any of the improvements were completed. Not only is it evident that both the omitted added assessment for tax year 2000 and the added assessment for 2001 were fictitious as to amount, but also it is clear that the years as to which the assessor attributed the completion of the improvements were arbitrary. The assessor admitted that he had not inspected the subject property until sometime in 2001. He knew at least as early as late 1999 that a series of building permits for various projects at the site had been taken out by Nestle during 1997, 1998 and 1999, and candidly admitted that there might have been value added to the property by October 1, 1999. He further testified that he was unable to specify which projects resulted in the 2000 omitted added assessment and which projects resulted in the 2001 added assessment. In other words, he had no idea whether any of the improvements had been completed by October 1, 1999 and should properly have been included in the regular assessment for tax year 2000; or whether any improvements had been completed between October 1, 1999 and January 1, 2000 and should have been included in an added assessment for 1999 pursuant to N.J.S.A. 54:4-63.2; or whether any particular improvement was completed either in tax year 2000 or in tax year 2001.
An original assessment is entitled to a presumption of correctness. Pantasote Co. v. City of Passaic, 100 N.J. 408, 412, 495 A.2d 1308, 1310 (1985). The presumption is “a construct that expresses the view that in tax matters it is presumed that governmental authority has been exercised correctly and in accordance with law.” Id. at 413, 495 A.2d at 1311. As readily acknowledged by plaintiff, there is no presumption that the fictitious assessments in the amount of $1 are correct. That quantum is, on its face, so wide of the mark of true value, and indicative of deficiencies in assessment methodology that no presumption of validity attaches to the assessments. Id. at 414-15, 495 A.2d at 1311-12. See also, Watnong Assocs., Inc. v. Morris Tp., 11 N.J.Tax 108, 117-18 (1990) aff'd per curiam 12 N.J.Tax 252 *151 (Super.Ct.App.Div.1991) (an assessment loses the presumption of validity if it is derived from a patently arbitrary and capricious assessment methodology or is totally unrelated to true value).
Plaintiff maintains, however, that because the assessor could not determine when the improvements were completed or their value, any assessments attempting to place a value on the improvements prior to receipt of the expert’s report would have been as arbitrary as the $1 assessments in issue here. It notes that the expert undertook a review and analysis of the building permits applied for and issued, of inspection reports, and final certificates of occupancy. Apart from a statement that the facility had been renovated during the 1990’s, there is nothing in the report that indicates that the expert was able to draw any conclusion as to when any particular improvement was completed. Plaintiff nevertheless claims that, without such an expert evaluation, the assessor was unable to determine which permits affected the value, or the nature and dates of work completion. In effect, plaintiff argues that the fictitious $1 assessments made for years in which some improvements may have been completed were less arbitrary than a good faith attempt by the assessor to value the subject property to the best of his ability.
N.J.S.A. 54:4-23 requires that the assessor, “after examination and inquiry, determine the full and fair value of each parcel of property situate in the taxing district” as of October 1 of each pretax year. N.J.S.A. 54:4-63.3 requires the assessor, “after examination and inquiry,” to determine, as of the date of completion, the taxable value of property containing any building or other structure which has been erected, added to or improved prior to October 1 of the tax year. Similarly, N.J.S.A. 54:4-63.2 requires the same examination and inquiry with respect to improvements completed after October 1 and by December 31 of the tax year.
In this case, there was no examination and inquiry. The assessor failed to perform his statutory duties. That failure is not excused by the assessor’s professed inability to value the subject property.
*152 The valuation of a large, complex industrial facility is undoubtedly difficult. The assessor is nevertheless obliged to value each property in the taxing district at “such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract on October 1” of the pretax year. N.J.S.A. 54:4-23 (emphasis supplied).
In order to fulfill their statutory duties, assessors are obliged to learn of construction projects and their progress in a timely manner. While it may be possible for assessors to fulfill their obligations with respect to residential or other less complex properties by waiting for copies of building permits and certificates of occupancy to arrive on their desks, that procedure was demonstrably unworkable in a project of the apparent complexity and magnitude such as was undertaken by Nestle. For example, the assessor could have made regular inquiry of municipal construction officials to learn if new building permits had been applied for and of any inspections that had been completed.
An assessor is also expected to examine and inquire after becoming aware of an ongoing construction project. N.J.S.A. 54:4-63.3. A regular practice of inspecting during the course of construction rather than waiting until after a certificate of occupancy is issued, and of inquiring as to the cost of the improvements,[6] is helpful in developing an informed judgment as to when a particular improvement had been completed and of its value. Guidance in performing the “examination and inquiry” required by N.J.S.A. 54:4-63.3 to determine the taxable value of property following the completion of improvements is provided in the New Jersey Division of Taxation’s Handbook for New Jersey Assessors (1989) ¶ 701.6:
Added Assessments should be determined throughout the year as new properties become taxable. If the assessor has kept a continual check on all construction underway ... the compilation of the Added Assessment List will be a simple matter. However, if the task is deferred until just before October 1, the assessor will be faced with a difficult problem in locating all new taxable values, determining when they became taxable, and calculating the correct added assessment.
*153 Plaintiff has not contended here that it will be able to prove when particular improvements were completed. It has instead asserted that it is the assessor’s discovery of the improvements that is significant. Plaintiffs argument that it is not uncommon for property owners to make improvements without the benefit of municipal permits and that the purpose of the added and omitted assessment statutes is to permit a municipality to capture the value of improvements when the same are discovered is a red herring in this case. There was no “discovery” of undisclosed improvements here. There was an affirmative refusal to determine the date on which known improvements were completed and to determine their value. Moreover, N.J.S.A. 54:4-63.3 does not permit added assessments for the year in which an improvement is discovered. Rather, added assessments are made for the tax year in which an improvement is completed. When an assessor fails to discover an improvement in the year in which it is completed, he or she may, in the following year, make an omitted added assessment.
I am also not persuaded by plaintiffs contention that it would be inequitable to the rest of its taxpayers for Nestle to escape taxation on improvements that were completed at some point in time prior to the making of the assessments in issue here. A similar contention was raised in F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 495 A.2d 1313 (1985), which held that the statutory period of limitations for the appeal of tax assessments was applicable to municipalities as well as to taxpayers. There, the municipalities argued that forbidding the Tax Court from increasing an assessment in the absence of a timely municipal appeal would harm other taxpayers who would have to pay more than their fair share of property taxes. The Court rejected this reasoning:
The arguments advanced by the municipalities overlook the point that the legislation prescribes a carefully structured procedural framework for resolving tax disputes and requires strict adherence to the statutory plan. The statutory scheme itself strikes the balance between the ultimate fairness that is achieved when government acts conscientiously and properly and in accordance with the statutory standards and the apparent fairness to an individual taxpayer that is achieved in a particular appeal.
[Id. at 429, 495 A.2d at 1319].
*154 A municipality has the opportunity to satisfy itself as to the correctness of its regular assessments by the date for appeal set forth in N.J.S.A. 54:3-21, which is currently April 1 of the tax year. Notably, in early 2000, the assessor asked plaintiff for the funds to hire an appraiser to provide the expertise necessary to assess the subject property. Notwithstanding that plaintiff itself could have reviewed Nestle’s assessment, the assessor here effectively advised plaintiff that his regular assessment for tax year 2000 was incorrect. Plaintiff could have and should have achieved a fair result for Nestle as well as its other taxpayers by filing timely appeals of the regular assessments for 2000 and 2001.
Our Supreme Court has made it clear that government officials must act solely in the public interest, and that in dealing with the public, government must “turn square corners.” F.M.C. Stores Co. v. Borough of Morris Plains, supra, 100 N.J. at 426, 495 A.2d at 1317.
[T]he statutory provisions governing substantive standards and procedures for taxation, including the administrative review process, are premised on the concept that government will act scrupulously, correctly, efficiently, and honestly. It is to be assumed that the municipality will exercise its governmental responsibilities in the field of taxation conscientiously, in good faith and without ulterior motives. To that end, it is expected that it will make proper assessments, which are accorded a strong presumption favoring their validity.
[Id. at 427, 495 A.2d at 1318].
The assessments were made contrary to the statutory scheme for added assessments, which mandates that, after examination and inquiry by the assessor, such assessments are to be made for the tax year in which the improvements are completed or in the next succeeding year. The assessments appealed from were made only with the knowledge that the improvements had been made sometime before the inspection of the subject property in 2001. I therefore conclude that the omitted added assessment for tax year 2000 and the added assessment for tax year 2001 must be voided.
In reaching this conclusion, I note that plaintiff is not forever barred from adding to its tax rolls the value of improvements completed during tax years 2000 and 2001. Each tax year is a separate cause of action, and a dismissal with prejudice with respect to the omitted added assessment for tax year 2000 and the *155 added assessment for 2001 does not have the “resounding finality” that it does in other litigation. Jepson Refrigeration Corp. v. Trenton City, 15 N.J.Tax 467, 473, rev’d on other grounds, 16 N.J.Tax 457 (Super.Ct.App.Div.1996). For tax year 2002, for example, the subject property has been assessed for a significantly higher amount than for the years in issue here, which amount presumably represents the assessor’s judgment of the value of the property as of October 1, 2001, reached with the assistance of the appraiser, and would include any improvements completed in tax years 2000 and up to October 1, 2001.
The Clerk of the Tax Court will be directed to enter judgment canceling the assessments in issue.

 Plaintiff's counsel asserted at oral argument and in briefs that the assessor did not "become aware” of the building permits until late in 1999. I do not find support in the record for the assertion, but the date on which the assessor acquired actual knowledge of the building permits is not material to my decision.

 At the deposition, which was held on June 19, 2002, the assessor produced his files for the subject property, which included a number of construction permits, certificates of occupancy and related documents. It was noted at the *143 deposition that the files totaled 79 pages and dated from 1991 through the present.

 A resolution adopted by the Mayor and Council of the Borough of Freehold on December 27, 2001, appended to a supplemental brief of Nestle's, indicates that the appraisal firm was formally retained following the filing of the complaints in these matters and was retained for the purpose of tax appeal litigation. The appraisal report prepared by the firm is dated December 7, 2001. At oral argument, counsel for plaintiff advised that the contract with the appraisal firm was actually signed earlier in 2001, prior to the filing of the complaints and the subsequent adoption of the resolution.

 Plaintiff initially filed complaints directly appealing the assessments to this court on November 29, 2001. Those complaints were docketed as 004915-2001 and 004916-2001. Plaintiff also appealed the assessments to the County Board, which issued its judgments on December 17, 2001, and mailed them to the parties on December 28, 2001. Plaintiff then appealed those judgments by complaints filed on February 8, 2002 and docketed as 000176-2002 and 000177-2002. The latter two complaints have been administratively dismissed, with the judgments noting that further proceedings will be conducted under the 2001 docket numbers.

 See also N.J.S.A. 54:4-63.2, which authorizes added assessments for improvements completed after October 1 of the tax year and before January 1 of the following year.

 At oral argument, Nestle’s counsel pointed out that building permits often contain information regarding estimated costs of construction.