SUNDAR, J.T.C.
Plaintiff (“City”) appeals the judgments of the Middlesex County Board of Taxation (“County Board”) which reversed the City’s omitted assessments placed only on the value of the improvement on defendants’ (“Taxpayers”) property, a two-family home, for tax years 2010 and 2011. For tax year 2007, the County Board had, in a regular’ tax appeal by the Taxpayers, reduced the value of the fire-damaged home from $164,900 to $0 but affirmed the land value of $86,500. These values continued for 2008 and 2009 due to the Freeze Act. For tax years 2010, and 2011, the same values continued as of the respective assessment dates of October 1, 2009 and October 1, 2010. The City then imposed omitted assessments of $164,900 as improvement value in late 2011 for each tax year. The County Board reduced the same to $0.
The City contends that the County Board erred because the building, although fire damaged, did not have a $0 value for 2010 and 2011. Therefore, it was improperly “omitted” from the tax lists when the building’s value was placed at $0 as of the relevant valuation dates. According to the City, the improvement value for each tax year under the sales comparison approach, and after deduction for repair costs, should be $129,100 and $125,700 respectively.
For the reasons stated below, the court finds that the City’s omitted assessments were improperly placed. Therefore, this *326 opinion does not address the valuation evidence offered by the City. The County Board’s judgments reducing the value of the improvements to $0 are affirmed. The City’s complaints are dismissed with prejudice.

FACTS AND PROCEDURAL HISTORY

(A) Background

Taxpayers own property located in the City identified as Block 43, Lot 13 (“Subject”). It is improved by a four-storied, split-level two-family home. The first unit has three bedrooms and three full bathrooms. The second unit has two bedrooms and two full bathrooms. The property record card indicates the Subject had a partially finished full basement (813 square feet (“SF”) of the 1,451 SF area), a “livable area” of 2,376 SF, and a lot size of 2,700 SF (27’ x 100’). It is about 90 years old. Until a fire in 2005, the Subject was being leased out, thus, was income-producing property.
Sometime in February 2005, there was a major fire on the adjacent property which was improved with a liquor store. As a result, that property was completely destroyed. Although the two-family home on the Subject remained standing, it was significantly damaged by the effects of the fire. The vinyl siding on the left side of the building on the Subject (adjacent to, thus closest to the next-door building which caught fire) melted. Water from the fire-hoses flooded the Subject’s basement and damaged the windows and walls. The Subject’s interior walls were also damaged due to the fire-fighters efforts to ensure containment of the fire and that the residual embers were not burning within the interior walls. Due to the damage, the fire department disconnected basic utilities such as water and power supply to the Subject. The existing tenants had to be evicted from the premises.
Taxpayers then boarded up the windows and “wrapped” the building to protect it from the cold. They claimed that mold developed due to water in the basement caused by the firefighting, and spread during the Subject’s vacancy.
A Building Code enforcement official inspected the Subject’s interior soon after the fire, but did not get a clear view because of *327 the fire, smoke and water damage. He was thus unable to gauge the extent or quality of the damage. He speculated that about 20% of the interior walls looked to be damaged. He thereafter posted a placard on the Subject indicating it as “Unsafe.”
Sometime in November 2007, the same official noticed that the exterior of the Subject was unchanged with the effects of the fire damage still visible. He claimed that the windows were boarded up at this point but did not know the interior condition. He thereafter issued a “Notice of Unsafe Structure; Notice of Imminent Hazard” to the Taxpayers stating that pursuant to a November 5,2007 inspection, the building on the Subject was “unsafe due to structural issues.” The Notice required the Taxpayers to (a) vacate the Subject; and (b) “demolish [the] structure” no later than December 5,2007.
During the period between 2006 and 2011, the City’s officials and the South Amboy Redevelopment Agency had approached Taxpayers with several redevelopment proposals for the Subject. These included proposals for Taxpayers to purchase and develop the adjacent fire-destroyed property; sell the Subject to the adjacent property owner; or redevelop the Subject as part of the redevelopment project for the area. Taxpayers submitted, at their expense, plans proposing the demolition and redevelopment of the Subject in this regard. Talks eventually failed in 2011. During the entire time, the Subject lay vacant causing it to be vandalized and burgled by vagrants.
Sometime toward the end of 2011, the Building Code official procured an order from the municipal court for enforcement of his November 2007 notice of repair, due to Taxpayers’ alleged noncompliance with the same. Thereafter, Taxpayers applied for a permit through their contractors. The permit application noted the scope of work as repairing the roof framing; replacing sheathing; repairing the siding and roofing; and insulating walls and sheetrock. On March 14, 2012 the City issued a permit to Taxpayers, through their contractor, for making “alterations - fire damage repair” to the building at an estimated cost of $6,000 for its “rehabilitation.”
*328 Taxpayers had also provided the City with their engineer’s sketch dated March 1, 2012 of the proposed areas of repair to only the rear upper left portion of the roof (the side exposed to the fire). Although a notation on the sketch copy stated “No interior work proposed [at] this time. Exterior work only,” the sketch proposed insulation and sheetrock addition to interior walls within that roof area. The City approved the plan on March 7, 2012.[1]
During a subsequent inspection by the Building Code enforcement staff in connection with the issued permit, it was discovered that Taxpayers were making additional renovations and repairs to the interior including electrical and plumbing.[2] Therefore, Taxpayers were required to procure additional permits. Another permit dated August 8, 2012 was issued for repairs, replacements or renovations to building, electrical, plumbing, fire protection, furnace, water heaters, and the like, based upon applications of four different contractors, totaling an estimated cost of $19,200. The City issued a Certificate of Occupancy on May 9, 2013.

(B) Tax Assessments

In 2005, and pursuant to a revaluation for that year, the Subject was assessed at $303,000 ($86,500 allocated to land and $217,200 allocated to improvements). The assessor claimed that due to the fire, he reduced the subsequent years’ improvement value allocation by about 24% to $164,900 (which thus reduced the total assessment to $251,500). He stated that this amount was subjective because he could not find sales of other fire-damaged build *329 ings, and in any event, due to the minor damage to the exterior of the Subject, he felt a 20% reduction to the previously allocated improvement value was appropriate.
At no time, after the fire, and even for purposes of the trial, did the assessor inspect the interior. At no time was there any request to the Taxpayers for information on the estimated costs for fire-damage repairs or for the quantum of the fire damage.
For tax year 2007, Taxpayers appealed the assessment of $251,400 ($86,500 allocated to land; $164,900 to improvements) to the County Board. The County Board reduced the improvement value to $0 but affirmed the land value. The City did not appeal this judgment. Therefore, the same $0 improvement value allocation continued for tax years 2008 and 2009 pursuant to the Freeze Act. Taxpayers thus paid tax only on the land value of $86,500.
As of the October 1 valuation dates for each tax year 2010 and 2011, the same assessments continued to be placed on the Subject ($86,500 allocated to land; $0 to improvements). Sometime in late 2011, the assessor imposed an omitted assessment using the same improvement value of prior years, namely, $164,900. He stated that as opposed to the liquor store which had a “hole in the ground” after the fire, the Subject contained the standing building, thus, it could not be of $0 value. Since the building had been “omitted” from being assessed, he “put it back” on the assessment list. The assessor averred that he followed all the required procedures of the statute in this regard, including the timely issuances of assessment notices, and that the reason on those notices was likely stated as “building omitted from tax list.”
Taxpayers filed timely petitions of appeal to the County Board. The County Board reduced the value allocated to the improvement to $0. It issued two judgments on December 22, 2011 for each tax year. On each judgment, the “Original Assessment” column showed $164,900 improvement assessment being prorated for 12 months at the same amount, and the “Judgment” column showed $0 improvement assessment prorated for 12 months at $0.[3] The judgments used Code 15 (“added assessment removed”).
*330 The City appealed both these judgments on January 23, 2012. On its Case Information Statement for each tax year, it indicated that it was appealing the County Board judgments for “added or omitted assessment” and filled in the information on the “Omitted or Omitted/Added Assessment” box.
For purposes of these appeals, the City’s assessor testified to the Subject’s value for each tax year. The assessor used the sales comparable approach to first value the Subject “as clean,” and then deducted therefrom 100% of the costs to cure. These costs were $25,200 which represented the total of the estimates shown on the March 2012 and August 2012 permits ($6,000 + $19,200).* *[4] He concluded a value of $245,500 for tax year 2010. Applying the average ratio of 87.84% provided an indicated assessment of $215,600 (allocated $86,500 to land and $129,100 to improvements). For 2011, he concluded a value of $231,200. Applying the average ratio of 91.77% provided an indicated assessment of $212,500 (allocated $86,500 to land and $125,700 to improvements). Thus, his value allocation to the improvements were lesser than as originally included on his omitted assessment list.

ANALYSIS

(A) Validity of the Omitted or Added/Omitted Assessments

There are three methods for imposing assessments which are outside the normal annual assessment requirements of N.J.S.A. 54:4-23 and 54:4-35. These are added assessments, omitted assessments and omitted added assessments, each of which is permitted a different time-table as to their imposition and notice, and thus, for appeals from such assessments.
*331 An added assessment is where there is an increase in value due to the completion of a building/structure, or an addition or improvement thereto, after the October 1 valuation date but either by the end of the pre-tax year or during January to October of the tax year. See N.J.S.A. 54:4-63.2; 63.3. The added assessment captures tax on properties becoming “taxable during the year following the” October 1 valuation date which would otherwise escape such tax “until the next assessment date.” Snyder v. Borough of South Plainfield, 1 N.J.Tax 3, 7 (Tax 1980).
An “omitted added” assessment is one where an assessor fails to make an added assessment for any reason. See In re New York State Realty & Terminal Co., 21 N.J. 90, 97, 121 A.2d 21 (1956) (assessor could use the larger time frame allowed under the omitted assessment law to include the added assessment he had failed to impose on newly constructed structures because the principle purpose of both the added and omitted assessment statutes was to prevent avoidance of taxes). See also Borough of Freehold v. Nestle USA, 21 N.J.Tax 138, 153 (Tax 2003) (“[w]here an assessor fails to discover an improvement in the year in which it is completed, he or she may, in the following year, make an omitted added assessment.”).
Here, although the County Board voided or zeroed out the “added assessments,” there is nothing to indicate that there was a completion of, or addition to, the Subject’s improvements at any time after October 1, 2009 and up until October 1, 2010 (tax year 2010), nor at any time after October 1, 2010 and up until October 1, 2011 (tax year 2011). Taxpayers commenced repairs and renovations to the building only in early 2012 after acquiring the March 2012 permit. The certificate of occupancy was issued only in 2013. Therefore, there was no basis for added assessments, thus, none for “omitted added” assessments.
The issue then is whether the City’s resort to the omitted assessment procedure was proper. An omitted assessment is where an assessor can “assess any taxable property omitted from the assessment list for [a] particular tax year.” N.J.S.A. 54:4-63.31. The assessment can be placed on the tax list *332 “[i]n any tax year or in the next succeeding tax year.” Ibid. However, the value of the omitted property must “be determined as of October 1 of the preceding year.” Ibid.[5] The procedure is meant to “provide a means whereby ... property omitted from the tax rolls through design or inadvertence can be added and included and taxed ... for the year in which it was omitted from the tax rolls.” In re New York State Realty & Terminal Co., supra, 21 N.J. at 97, 121 A.2d 21. The statute “aid[s] in accomplishing a proper and equitable distribution of the tax burden.” Ibid. The procedure “is broadly applicable” and “applies to any omission, regardless of cause.” American Hydro Power Partners, L.P. v. City of Clifton, 239 N.J.Super. 130, 138, 570 A.2d 1246 (App.Div.), certif. denied, 117 N.J. 75, 563 A.2d 837 (1989).[6]
An example of a valid omitted assessment includes an assessor’s failure to value a partially constructed building even though he had placed a value on land as if vacant. Boardwalk Properties v. City of Atlantic City, 5 N.J.Tax 192, 198 (Tax 1983). An example of an invalid omitted assessment is where an assessor places a value on the existing improvement on October 1 of the pre-tax year and then tries to increase the value using the omitted assessment procedure. See 200 43rd Street L.L.C. v. City of *333 Union City, 16 N.J.Tax 138, 142 (Tax 1996) (assessor cannot use omitted assessment to increase the $0 value he had placed on the improvements believing them to be worthless, since his “failure to make an assessments for improvements ... was not an oversight; it was a deliberate judgment that the improvement had no value”). See also Borough of Freehold, supra, 21 N.J.Tax at 147-49 (assessor cannot place a $1 fictitious assessment on improvements to delay reaching an opinion of value until the filing of an omitted assessment appeal).
In Glen Pointe Associates v. Township of Teaneck, 10 N.J.Tax 598, 601 (Tax 1989), the court refused to validate an omitted assessment upon a newly constructed improvement because it had existed as of the valuation date and was not “omitted as a taxable line item.” The court ruled that the assessor’s failure to include the value of the improvements was “simply an erroneous determination of value on the assessing date” which cannot be “eorreet[ed] administratively at a later date.” Id. at 601. It held that the “only way to remedy such an incorrect determination” is an appeal under N.J.S.A. 54:3-21 by the taxing district. Ibid.
Similarly in SLR Associates of Millville v. Millville City, 11 N.J.Tax 1 (Tax 1989), the court voided the omitted assessments which sought to replace the originally assessed amounts with the “correct” revaluation amounts. The court noted that “[tjhere is no authority in ... the omitted assessment statute which permits an assessor to utilize the alternate method of the omitted assessment act to remedy an assessment correctable under” the Corrections of Errors law, N.J.S.A. 54:51A-7, “nor has such a procedure been confirmed by our courts.” Id. at 5. The court disapproved the assessor’s “short cut” method of rectification since by imposing an omitted assessment, the burden of appeal would be “shift[ed] to the taxpayer.” Ibid. In the absence of statutory authority, resort to the omitted assessment procedure was invalid and a “common practice among assessors of improperly utilizing the omitted assessment statute does not legitimize its application.” Ibid.
Here, the assessor’s basis for imposing omitted assessments was that the building could not have a $0 value as reflected in the *334 original assessments as of October 1, 2009 and October 1, 2010, since it was standing despite the fire damage. Therefore, he considered the improvement on the Subject as being “omitted” from being assessed. However, this determination falls into the category of an impermissible attempt to simply increase the value of the existing building on the Subject after the relevant valuations dates. Prior to the 2007 County Board judgment, the assessor had determined the value of the improvements to be $164,900. Due to the application of the Freeze Act to the 2007 County Board judgment, he placed a $0 value to the same for tax years 2008 and 2009. By continuing to place this $0 value for the improvements for tax years 2010 and 2011, he is deemed to have determined the building’s value as worthless as of the relevant valuation dates for these tax years. This is so even if he had simply carried forward the prior year’s zero value. See e.g. Clinton Fountain Motel, L.P. v. Township of Clinton, 18 N.J.Tax 486, 488-489 (App.Div.1999) (“it is not intrinsically unreasonable for an assessor to assess a property at the same value as in the prior year” thus, “the assessor’s decision to carry forward the assessment from the prior year” still required a plaintiff to prove “the unreasonableness of that assessment”). Cf. City of Hackensack v. County of Bergen, 405 N.J.Super. 235, 251, 963 A.2d 1236 (App.Div.2009) (agreeing with the Tax; Court’s grant of tax exemption on grounds “no change had occurred,” therefore, “the assessment” was properly “fix[ed] ... at $0”).
There was no “omission” to place a value as of the relevant valuation dates. The building always existed. It was assessed with a taxable value until 2007, then with $0 value until tax year 2009. The assessor’s explanation that the improvements on the Subject should not have had a $0 value because it was still standing and not completely gutted (as was the adjacent property where the fire was) and therefore should not be “omitted” from being assessed at its fair market value, does not justify his resort to the omitted assessment procedure under the plain language of the statute or the interpretive precedent. Nothing prevented the assessor from making a determination that the value of the improvement on October 1, 2009 or October 1, 2010 was something *335 more than $0. Even if he had mistakenly continued to place the improvement value as $0 as of these valuation dates, nothing prevented the City from using the regular appeal procedure to increase the assessments for tax years 2010 and 2011. Therefore, his omitted assessment for the improvement value for each tax year is invalid.

(B) Valuation

As set forth above, the court has determined that the omitted assessments were improper. This renders unnecessary any analysis of the credibility of the City’s value conclusions.

CONCLUSION

For the aforementioned reasons, the omitted assessments for tax years 2010 and 2011 for the value of the improvement on the Subject are void. The County Board judgments reducing the same to $0 are hereby affirmed. The City’s complaints are dismissed with prejudice. An Order and Judgment in accordance with this opinion will be issued.

At Taxpayers' objection that the City did not present the engineer who prepared the sketch, South Amboy claimed the sketch was admissible as an exception to hearsay under Evid. R. 803(b)(3) and (4). Because the court is deciding the issue based on the validhy of the omitted assessments, this objection need not be addressed.

 Taxpayers did not desire to spend on repairs due to the City’s redevelopment proposals. Once those talks failed at the end of 2011, they decided to make the Subject habitable for re-letting. Due to the building's age, its vacant status for several years post-fire, and its vandalized condition, the repairs and replacements to the interior morphed into a total renovation of the two-family home.

 The judgments also showed the land assessment as $0 in both columns. Thus, the total assessment (land plus improvements) in the County Board *330 judgment showed $0. The parties agreed that the assessment allocated to land remained as $86,500 and that Taxpayers had paid taxes on the same.

 Taxpayers maintained that the costs to repair and renovate were, at a minimum, $161,627. This comprised Taxpayers' estimates of Mr. Karpowicz’s labor costs and materials ($68,000); material costs based on Home Depot and Lowes invoices ($44,385); and five contracts for electric, plumbing and construction work (totaling $39,643). They stated that the materials were purchased only in late 2011 but no repair work was done in 2011.

 Thus, here, the assessor could place an omitted assessment for tax year 2010 in 2010 or 2011, and for tax year 2011 in 2011 or 2012.

 The omitted assessments must "strictly compl[y] with" the statutory procedure or risk invalidation. Township of Little Egg Harbor v. American Tel. & Tel. Co., 9 N.J.Tax 314, 323 (Tax 1987), aff'd, 10 N.J.Tax 236 (App.Div.), certif. denied, 114 N.J. 297, 554 A.2d 852 (1988). Statutory procedure requires the assessor file the omitted assessment tax list with the County Board by October 1 of the year of the omitted assessment. N.J.S.A. 54:4-63.32. After review, the County Board must send a certified copy of that list to the assessor and tax collector on or before October 10. Ibid. The assessor must then immediately notify the property owner of the omitted assessment. N.J.S.A. 54:4-63.35. The owner must file an appeal to the County Board on or before December 1 of the year of the levy. N.J.S.A. 54:4-63.39. The County Board must decide the appeal within one month after the "last day" of the filing deadline. Ibid. Here, based upon the date of the County Board judgments of December 22, 2011, and the assessor’s averments that he followed the requisite procedures, the omitted assessments for tax years 2010 and 2011 appear to have placed on the tax list in or after October of 2011.