**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2936-18T3

PLAZA TWENTY THREE
STATION LLC,

     Plaintiff-Respondent,

v.

TOWNSHIP OF PEQUANNOCK,

     Defendant-Appellant.

_____

Argued January 8, 2020 - Decided January 28, 2020

Before Judges Fuentes, Haas and Enright.

On appeal from the Tax Court of New Jersey, Docket No. 13577-2017.

Robert H. Oostdyk argued the cause for appellant (Murphy Mc Keon PC, attorneys; Robert H. Oostdyk, of counsel; James Matthew Parisi, on the briefs).

Michael D. Benak argued the cause for respondent (Mc Carter & English LLP, attorneys; Daniel Peter Zazzali, of counsel and on the brief; Michael D. Benak and Priscilla Mieir, on the brief).

PER CURIAM

Defendant Township of Pequannock (Township) appeals from the Tax Court's February 15, 2019 order granting plaintiff Plaza Twenty Three Station LLC's motion for summary judgment, and invalidating an added assessment the Township imposed on plaintiff's property for the 2017 tax year.  We affirm.

The facts, as derived from the evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, are fully detailed in Judge Vito L. Bianco's well-reasoned written amplification of his findings of fact and conclusions of law pursuant to Rule 2:5-1(b).  Therefore, we recite only the most salient facts from that decision and, like Judge Bianco, view them in the light most favorable to plaintiff, the non-moving party.  Polzo v. Cty. of Essex, 209 N.J. 51, 56 n.1 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)).

In February 2017, plaintiff purchased a large shopping center (the property)[1] in the Township for $51,050,000.  Prior to this purchase, the Township had assessed the property in 2016 for $24,446,100.  This assessment had remained unchanged since the last reevaluation of the property in 2011 for the 2012 tax year.

---

[1]  The property is approximately 18.76 acres in size, and the shopping center itself is approximately 162,000 square feet.

A-2936-18T3

The shopping center has a number of commercial tenants, including Stop and Shop, PNC Bank, Jersey Mike's, Visionworks, and Smashburger. In 2014, there were two permits issued for construction projects on the property. The first was issued on January 2, 2014, and closed on May 1, 2014. This permit was described as an alteration and allowed for floodproofing and a tenant fit-up for Stop and Shop. The total cost of construction work was listed as $2,899,500. The second permit was issued on February 19, 2014, and completed on May 1, 2014. The permit described the construction work as an alteration to PNC Bank. The total cost of the construction work was listed as $52,000.

In 2016, two more permits were issued for construction projects on the property. One permit was issued on February 16, 2016, and completed on April 26, 2016. The permit described the construction work as an alteration and tenant fit-up for Jersey Mike's. The total cost of the construction work was listed as $123,910.

The second permit was issued on October 21, 2016, and completed on January 4, 2017. This permit described the construction work as an alteration and tenant fit-up for Visionworks. The total cost of the construction work was listed as $146,700. The construction work included building (construction of two bathrooms, a retail space, a pre-test area, a lens preparation area, and a new

A-2936-18T3

ceiling); plumbing (bathroom fixtures, drinking fountains, water heater, gas piping, and HVAC); and electric improvements (lighting, service upgrade, and furnace/air conditioning).

In 2017, a permit for a project at Smashburger was issued on March 17, 2017, and closed on May 18, 2017. The permit described the construction work as an alteration and tenant fit-up for Smashburger. The total cost of the construction work was listed as $315,000. The construction included building (new tenant separation assembly, vestibule, two dining rooms, two kitchens, two bathrooms, and walk-in refrigeration units); plumbing (bathroom fixtures, kitchen fixtures, a water heater, and gas piping); electrical (lighting, receptacles, switches, and a sprinkler head system); and fire improvements (kitchen hood exhaust system and Ansul system).

In his deposition, the Township's tax assessor, Robert Sweeney, testified he was responsible for making changes to the municipality's assessment roll, such as imposing an added assessment or fixing a clerical error. He explained for "something simple like replacing a furnace or hot water heater, I wouldn't change [an] assessment[,]" but he would "if it's more substantial [like] either [an] addition[] [or] renovation." However, where there was a "big discrepancy,"

A-2936-18T3

the Township would be required to file a tax appeal, and he would not attempt to impose an added assessment.

Sweeney testified that he did not change the property's 2012 assessment value prior to 2017 "because the property had a history of flooding issues, [and] there were the prior appeals with the property with the prior owner." Sweeney stated that although he was aware that the property's market value changed between 2011 and 2016, he did not change the assessment because "at that time I wasn't sure. In retrospect, I would say, yes. But during those years, I wasn't sure."

However, after plaintiff purchased the property in February 2017, Sweeney imposed a twelve-month added assessment in the amount of $20,500,000. This raised the total assessment for 2017 from the original assessment of $24,446,100, to a total assessment of $44,946,100.

Although Sweeney alleged he prepared an income-based approach in determining the amount of the added assessment, he admitted he had no supporting documentation in his file to support this claim. Sweeney did not submit a Chapter 91 information request as permitted by N.J.S.A. 54:4-34 to any of plaintiff's tenants and, therefore, had no information concerning their

A-2936-18T3

business income.  Sweeney also did not inspect any of the stores before almost doubling the amount of the assessment.

Instead, Sweeney testified that in determining to impose an added assessment in 2017, he reviewed the construction permits from Stop and Shop, PNC Bank, Jersey Mike's, Visionworks, and Smashburger.  However, as plaintiff pointed out in its motion for summary judgment, and as Judge Bianco would later correctly conclude, the imposition of an added assessment is limited to a specific timeframe.

By way of background, N.J.S.A. 54:4-63.2 provides that added assessments may be made when "any building or other structure . . . has been erected, added to or improved after October 1" of the pretax year, which is the date of the original assessment for the tax year, and completed before January 1 of the tax year.  Further, N.J.S.A. 54:4-63.3 allows added assessments to be imposed when "any building or other structure . . . has been erected, added to or improved after October 1" of the pretax year, and completed between January 1 and October 1 of the tax year, which would be the next regular assessment date.

An added assessment can only be imposed after the date of a project's completion.  See N.J.S.A. 54:4-63.2 and -63.3.  N.J.S.A. 54:4-63.1 defines "completed" as "substantially ready for the use for which it was intended."  See

A-2936-18T3

also Freehold Borough v. Nestle USA, 21 N.J. Tax 138, 153 (Tax 2003) ("N.J.S.A. 54:4-63.3 does not permit added assessments for the year in which an improvement is discovered. Rather, added assessments are made for the tax year in which an improvement is completed."). Thereafter, "[t]he added assessment is prorated for the number of months following completion." Van Orden v. Twp. of Wyckoff, 22 N.J. Tax 31, 34 (Tax 2005) (citing N.J.S.A. 54:4-63.3).

The purpose of the added assessment law "is to permit the taxation of real property which becomes taxable during the year following the assessment date of October 1. . . ." Snyder v. Borough of South Plainfield, 1 N.J. Tax 3, 7 (Tax 1980). "Without the added assessments, an improved property would escape taxation for a period of several months until the next regular assessment date." Otelsberg v. Bloomfield Twp., 18 N.J. Tax 243, 248 (Tax 1999).

However, "[a]n assessor is bound to follow proper procedure for assessing the value of property inadvertently left untaxed without resort to methods statutorily unauthorized." Parikh v. Livingston Twp., 30 N.J. Tax 326, 338 (Tax 2018). Therefore, "assessors are obliged to learn of construction projects and their progress in a timely manner." Freehold Borough, 21 N.J. Tax at 152. This is particularly important because

a public entity is duty-bound to "turn square corners" when dealing with the public, which includes the "primary obligation [] to comport itself with compunction and integrity . . . ." FMC Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426-27 (1985) (citation omitted). The time constraints contained in the statutes that govern the property tax scheme are by necessity restrictive, and strict compliance is required. Ibid. It is the role of the legislature, not the tax court, to alter or relax the statutory requirements.

[Parikh, 30 N.J. Tax at 339.]

Our Supreme Court has also noted that:

[w]hile practicalities obviously preclude most assessors reviewing every assessment line item every year, see Bergen Cty. Bd. of Taxation v. [Borough] of Bogota, 104 N.J. Super. 499, 507 (Law Div. 1969), there should nevertheless be alertness to changed valuation factors peculiarly affecting individual properties in years between revaluations and requiring prompt revision of such assessments in fairness to the particular taxpayer or to the taxing district. Cf. [Twp. of Willingboro v. Burlington Cty. Bd. of Tax., 62 N.J. 203, 213-214 (1973)]. It should be obvious that, absent such attention, the carrying over of assessments each year from one general revaluation to the next is not the proper discharge of the assessor's function.

[Tri-Terminal Corp. v. Borough of Edgewater, 68 N.J. 405, 414 (1975) (emphasis added).]

In Glen Pointe Assocs. v. Teaneck Twp., 10 N.J. Tax 598, 599-600 (Tax 1989), the tax assessor imposed two added assessments for construction completed in September 1984. One added assessment covered the remaining

8

months of 1984 and the other covered the entire year of 1985. Ibid. The Tax Court reasoned that the 1985 twelve-month added assessment was invalid "because it was not imposed for a year in which the property was substantially completed within the purview of N.J.S.A. 54:4-63.3. It was not, but should have been, part of the regular assessment made on October 1, 1984 pursuant to N.J.S.A. 54:4-23." Id. at 600-01. The court further noted:

> The assessor simply failed to consider the full value of the subject [property] as of the assessing date, October 1, 1984, for tax year 1985. The situation is simply an erroneous determination of value on the assessing date which the assessor attempts to correct administratively at a later date. The only way to remedy such an incorrect determination is for the taxing district to file an appeal with county board (or with the Tax Court if the assessment exceeds $750,000) pursuant to N.J.S.A. 54:3-21.
>
> [Id. at 601 (emphasis added).]

Plaintiff filed an appeal from the added assessment for 2017 and, in its motion for summary judgment, argued that the Township violated N.J.S.A. 54:4-63.2 and N.J.S.A. 54:4-63.3 because its assessor based the assessment on projects completed well before the 2017 tax year. Judge Bianco agreed with plaintiff's contention on this point. Citing the clear language of the statutes and the case law interpreting them as referenced above, the judge found

9

> that the flood proofing, which was completed in 2014 [at the Stop and Shop,] and the work completed at PNC Bank and Jersey Mike's, which were completed in 2014 and 2016 respectively, should not have been incorporated into the 2017 added assessment as they were completed before October 1, 2016. Consequently, only the work at [Visionworks] and [Smashburger] should have been considered for the 2017 added assessment.

In response to this ruling, the Township asserted that the added assessment was properly triggered solely by the Visionworks and Smashburger work, which occurred during the appropriate time frame for the 2017 tax year. In this regard, both N.J.S.A. 54:4-63.2 and -63.3 permit an added assessment to be imposed "when any parcel of real property contains any building or other structure which has been erected, added to or improved" during the pertinent time period. The Township acknowledged that the work at these stores did not constitute the erection or addition of a new structure or store. Instead, it asserted the work performed under the permits constituted "improvements" that could support the imposition of an added assessment.

However, the governing case law points to a different conclusion. In Harrison Realty Corp. v. Harrison Town, the tax assessor imposed an added assessment in March 1995. 16 N.J. Tax 375, 377 (Tax 1997). The renovations and upgrades that were the basis of the added assessment included: (1) new

10

walls, ceilings, and floor coverings; (2) the installation of overhead loading doors and upgraded electrical system, sprinkler system, and HVAC system; and (3) a demising wall between leased spaces of two tenants.  Ibid.

In invalidating the added assessment, the Tax Court held:

> [t]he evidence shows that the major work done on the subject property following plaintiff's acquisition was in the nature of retrofitting, upgrading, and rectifying deferred maintenance.  While the evidence does indicate that a demising wall was installed, along with three more overhead loading doors, no proofs were forthcoming about the cost either of those items or of the retrofitting and upgrading.
>
> . . . The critical issue here is whether the work done represented an addition or improvement to the property within the meaning of the added assessment statute.  The mere retrofitting, upgrading or remediation of deferred maintenance does not constitute an addition to the property; nor does it constitute an improvement.  The term "improved," as used in the statute must, under the doctrine of ejusdem generis, be read in the context of the word "added" as used in the statute.  That is to say, an improvement is in the nature of an addition.
>
> The mere fact that the work done increased the value of the property, as both experts seem to agree, is irrelevant.  That increase in value can be reflected in the assessment for tax year 1996.
>
> [Id. at 384-85 (emphasis added).]

11

Similarly, the Tax Court found in <u>Fifth Roc Jersey Assocs., LLC v. Town of Harrison</u> that an added assessment was invalid because it was also based on construction that did not constitute an improvement under N.J.S.A. 54:4-63.2 and -63.3. 26 N.J. Tax 212, 228 (Tax 2011). In <u>Fifth Roc</u>, the basis for the added assessment to a hotel was for construction that included renovations to the guestrooms, lobby, ballroom, and bar; the replacement of elevators; and the installation of smoke and heat detectors. <u>Id.</u> at 227-28. As in <u>Harrison Realty Corp.</u>, the Tax Court concluded that this type of the work merely constituted retrofitting, upgrading, and remediation of deferred maintenance and, as such, was not an improvement under N.J.S.A. 54:4-63.2 and -63.3. <u>Fifth Roc</u>, 26 N.J. Tax at 228. The Township was unable to cite to any relevant judicial precedent holding otherwise.[2]

In invalidating the Township's added assessment based on the work performed at Visionworks and Smashburger, Judge Bianco stated

> Considering the [<u>Fifth Roc</u> and <u>Harrison Realty Corp.</u>] decisions, the work done here at the [property] does not rise to the level of an "addition" or "improvement." At [Visionworks], there was construction of two new bathrooms, a retail space, a pretest area, a lens preparation area, and a new acoustical ceiling.

---

[2] The Township's reliance on <u>Otelsberg</u> is unpersuasive as that case involved the valuation of residential, rather than commercial, property and is therefore inapposite. 18 N.J. Tax at 246-47.

Furthermore, there was installation of new bathroom fixtures, drinking fountains, water heater, gas piping, HVAC, new lighting, service upgrades, and furnace/air conditioning. The total expected cost for the entire construction was $146,700. For [Smashburger], there was construction of new tenant separation assembly, vestibule, cueing area, two dining rooms, two kitchens, two bathrooms, and walk[-]in refrigeration units. In addition, there was installation of new bathroom fixtures, kitchen fixtures, water heater, gas piping, new lighting, receptacles, switches, and exit signage. Furthermore, new commercial kitchen hood exhaust system, Ansul system, and sprinkler head system were installed. The total expected cost for the entire construction was $315,000. In the court's view, the work at both [Visionworks] and [Smashburger] are similar to the work described in Fifth Roc and Harrison Realty Corp. It was de minimis in nature relative to the entire leasable area (2.64% of the entire area) and the 2017 added assessment (2.25% of the added assessment). It constituted a mere retrofitting or upgrading, not an addition or improvement to the [property].

In so ruling, Judge Bianco rejected the Township's argument that it was entitled to a trial because there were allegedly outstanding issues of material facts. As the judge explained, the facts were not in dispute and were based upon the information provided by the Township's assessor. Moreover, the only matter at issue involved solely a legal question, that is, whether the retrofitting work done at the Visionworks and Smashburger constituted an "improvement" to those stores under N.J.S.A. 54:4-63.2 and -63.3. This appeal followed.

13

On appeal, the Township raises the same arguments it unsuccessfully pressed before the Tax Court. Thus, the Township again asserts that despite the clear holdings of Fifth Roc and Harrison Realty Corp., the construction work at Visionworks and Smashburger was sufficient to support the 2017 added assessment on the property. The Township also reiterates its contention that Judge Bianco should have conducted a trial instead of resolving the legal issue presented on plaintiff's summary judgment motion.

Our review of the Tax Court's decision granting summary judgment is de novo, using the same legal standard employed by Judge Bianco. Waksal v. Dir., Div. of Taxation, 215 N.J. 224, 231 (2013). "Summary judgment must be granted if 'the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting R. 4:46-2(c)).

Thus, we consider, as Judge Bianco did, whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Ibid. (quoting Brill,

142 N.J. at 540). If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007) (citing Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998)). We owe special deference to the expertise of the Tax Court, although we do not defer to its interpretation of statutes. Waksal, 215 N.J. at 231.

We have considered plaintiff's contentions in light of the record and these applicable legal principles. We are satisfied that Judge Bianco thoroughly and correctly addressed the issues in his written opinion, and properly granted summary judgment to plaintiff. The Township's appellate arguments are without sufficient merit to warrant further discussion here. R. 2:11-3(e)(1)(E). Therefore, we affirm substantially for the reasons expressed in the judge's February 15, 2019 oral opinion and his subsequent written amplification of his findings of fact and conclusions of law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-2936-18T3